[Civ. No. 33302. Second Dist., Div. Two. July 2, 1969.]

BARBARA L. WARRINGTON, Plaintiff and Appellant, v. CHARLES PFIZER AND CO., INC., Defendant and Respondent.

Oliver & Sloan, Richard L. Oliver, George S. Alfieris and Edward L. Lascher for Plaintiff and Appellant.

Brill, Hunt, DeBuys & Burby, Robert E. McGurl and Abe Mutchnik for Defendant and Respondent.

ROTH, P. J.—This is an appeal from a judgment of dismissal predicated upon an order sustaining Charles Pfizer & Co., Inc.'s (respondent) general demurrer to the third amended complaint of Barbara L. Warrington (appellant), without leave to amend.

Respondent demurred to the third amended complaint (complaint), as it did to each of the three prior pleadings (except the second amended complaint)[1] on the sole ground that the causes of action alleged therein arising from personal injuries (ailments) suffered by ingestion of a drug "diabenese" manufactured and distributed by respondent, are barred by the one-year statute of limitation. (Code Civ. Proc., § 340, subd. 3.)

---

[1]The demurrer to the second amended complaint raised certain ambiguities which were apparently cured by the third amended complaint. In any event, the sole ground of demurrer in the third amended complaint was Code of Civil Procedure, section 340, subdivision 3.

The causes of action here involved are Fourth to Seventh, both inclusive.

The sole question presented is when the causes of action against respondent accrued. Respondent contends they accrued at the time the tort was inflicted, to wit: the time appellant ingested the drug that caused and resulted in physical ailments of which she complains. Appellant concedes the application of section 340, subdivision 3, Code of Civil Procedure, but contends that the statute did not commence to run until the time she discovered or in the exercise of reasonable care should have discovered that she had been tortiously injured by respondent's product.

We agree with appellant.

In the recent case of *Howe* v. *Pioneer Mfg. Co.*, 262 Cal. App.2d 330 [68 Cal.Rptr. 617], plaintiffs, as tenants, took possession on December 7, 1960 and " 'thereafter on many diverse occasions and until . . . the 21st day of January, 1964 the plaintiffs . . . would from time to time become violently ill and nauseated, and on some occasions become unconscious and hospitalized'; that these injuries were caused by a gas furnace, negligently manufactured, installed and inspected and tested by defendants; that this furnace was dangerous and defective; and that plaintiffs' illness 'was unexplained and undetermined until . . . the 21st day of January 1964 when it was discovered . . . that as a direct and proximate result of said dangerous and defective furnace, gas had been permeating the said premises and poisoning the said plaintiffs.' " (*Howe* v. *Pioneer Mfg. Co.*, pp. 334-335.)

 *Howe*, at page 339 makes it clear ". . . that the one-year limitation of subdivision 3 of section 340 of the Code of Civil Procedure is applicable to the claims for damages for personal injuries whether predicated on negligence or breach or an express or an implied warranty."

The court in *Howe* said at page 340: "Generally, the right to bring and prosecute an action arises immediately upon the commission of the wrong claimed, and the statute of limitations runs from that time; thus, a cause of action in tort arises when the wrongful act is committed, not at the time of the discovery of the act."

" 'It is the general rule that the applicable statute of limitations begins to run even though the plaintiff is ignorant of his cause of action or of the identity of the wrongdoer. (1 Witkin, Cal. Procedure (1954) Actions, § 112, p. 615; *Rubino* v. *Utah Canning Co.* (1954) 123 Cal.App.2d 18, 27 [266 P.2d 163])' (*Calabrese* v. *County of Monterey* (1967) 251 Cal. App.2d 131, 141 [59 Cal.Rptr. 224]. . . .

". . . . . . . . . .

". . . Furthermore, when the fact of injury and the identity of the party responsible for it are known, the failure to discover some or most of the resulting damage until later will not toll the running of the statute. (*Strzelczyk* v. *Marki, supra,* 169 Cal.App.2d 703, 705; *Sonbergh* v. *MacQuarrie, supra,* 112 Cal.App.2d 771, 773-774; and see *Collins* v. *County of Los Angeles, supra,* 241 Cal.App.2d 451, 457-458.)"

However, analysis of some of the cases show that if the unawareness of the injury is induced by fraud, or there is some valid excuse for the ignorance, (*Sonbergh* v. *MacQuarrie, supra*) or there is a lack of actual and perceptible trauma (thus in *Rubino,* cited for the strict rule—the fact was plaintiff ate canned peas and became violently ill almost immediately thereafter—immediate illness after food poisoning is perceptible trauma)—or in the case of insidious and creeping disease (*Anderson* v. *Southern Pac. Co.,* 231 Cal.App.2d 233, 240 [41 Cal.Rptr. 743]), the strict rule will not be applied. There is, too, a line of cases holding that when no perceptible trauma is involved, and there is a silent and insidious onset of the injury or its effects, the cause accrues only when there is knowledge or means of knowledge which should alert the injured. (*Ricciuti* v. *Voltarc Tubes, Inc.,* 277 F.2d 809, 812; cf. *Brush Beryllium Co.* v. *Meckley,* 284 F.2d 797, 798; *Young* v. *Clinchfield Ry. Co.,* 288 F.2d 499, 502-503.)

In addition, there appears to be a definite trend toward the discovery rule and away from the strict rule in respect of the time for the accrual of the cause of action for personal injuries.[2]

In California, in compensation cases (*Marsh* v. *Industrial Acc. Com.,* 217 Cal. 338, 351 [18 P.2d 933, 86 A.L.R. 563]), and in the federal courts in the cases of insidious and creeping disease (*Urie* v. *Thompson,* 337 U.S. 163, 170 [93 L.Ed.

[2] (*Ricciuti* v. *Voltarc Tubes, Inc., supra*; *Allen* v. *Layton* (Del. 1967) 235 A.2d 261, 265; *City of Miami* v. *Brooks* (Fla. 1954) 70 So.2d 306; *Yoshizaki* v. *Hilo Hospital* (1967) 50 Hawaii 150 [433 P.2d 220, 223]; *Billings* v. *Sisters of Mercy* (1964) 86 Idaho 485 [389 P.2d 224, 232]; *Gahimer* v. *Virginia-Carolina Chemical Corp.* (7th Cir. 1957) 241 F.2d 836, 840; *Chrischilles* v. *Griswold* (1967) 260 Iowa 453 [150 N.W.2d 94, 99-100]; *R. J. Reynolds Tobacco Co.* v. *Hudson* (5th Cir. 1963) 314 F.2d 776, 786; *Gracie* v. *Koppers Co.* (1957) 213 Md. 109 [130 A.2d 754, 757]; *Johnson* v. *Caldwell* (1963) 371 Mich. 368 [123 N.W.2d 785, 791]; *Grey* v. *Silver Bow County* (1967) 149 Mont. 213 [425 P.2d 819, 820-821]; *Johnson* v. *St. Patrick's Hospital* (1966) 148 Mont. 125 [417 P.2d 469, 473]; *Dryden* v. *Omaha Steel Works* (1947) 148 Neb. 1 [26 N.W.2d 293]; *Sylvania Elec. Products* v. *Barker* (1st Cir. 1955) 228 F.2d 842, 848; *Fernandi* v. *Strully* (1961) 35 N.J. 434 [173 A.2d 277, 285-286];

1282, 1292-1293, 69 S.Ct. 1018, 11 A.L.R.2d 252]); *R. J. Reynolds Tobacco Co.* v. *Hudson, supra,* 314 F.2d 776) the strict rule which starts the running of the statute does not apply. Accrual date of the cause of action is postponed in cases involving medical (*Alter* v. *Michael,* 64 Cal.2d 480, 483 [50 Cal.Rptr. 553, 413 P.2d 153]; *Stafford* v. *Shultz,* 42 Cal.2d 767, 775 [270 P.2d 1]; *Huysman* v. *Kirsch,* 6 Cal.2d 302, 311-313 [57 P.2d 908]) insurance broker (*Walker* v. *Pacific Indem. Co.,* 183 Cal.App.2d 513, 516-519 [6 Cal.Rptr. 924]; and stock broker (*Twomey* v. *Mitchum, Jones & Templeton, Inc.,* 262 Cal.App.2d 690, 723-729 [69 Cal.Rptr. 222]; legal (*Lucas* v. *Hamm,* 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685]) and certified accountant (*Moonie* v. *Lynch,* 256 Cal.App.2d 361 [64 Cal.Rptr. 55]) malpractice and misfeasance cases. The strict rule excerpted from *Howe* is, in various cases, relaxed for a variety of reasons, such as implicit or express representation; fraudulent concealment, fiduciary relationship, continuing tort, continuing duty, and progressive and accumulated injury, all of them excusing plaintiff's unawareness of what caused his injuries and all applying the rule of discovery.

In reversing the summary judgment, the *Howe* court said at page 346: "In the instant case the wrongful conduct is alleged to consist of the failure to furnish a heating system which did not permit the escape of gas. The initial act or omission presumably occurred prior to the commencement of the plaintiffs' tenancy. There is, however, a continuing duty on the landlord to furnish the tenant a safe place to reside."

It appears therefore that despite the elaborate analysis of case law in *Howe,* its judgment rested upon the continuing duty of the manufacturer arising from an express or implicit warranty, to wit: that it would install a heating system which would not permit the escape of gas. Since in *Howe,* the duty breached was a continuing one, the tort complained of was well within the accrual time.[3]

---

*Brush Beryllium Co.* v. *Meckley, supra; Berry* v. *Branner* (1966) 245 Ore. 307 [421 P.2d 996, 998-1000]; *Ayers* v. *Morgan* (1959) 397 Pa. 282 [154 A.2d 788, 789, 792-794]; *Gaddis* v. *Smith* (Tex. 1967) 417 S.W.2d 577, 578-579; *Puretex Lemon Juice, Inc.* v. *S. Riekes & Sons of Dallas, Inc.* (Tex. Civ.App. 1961) 351 S.W.2d 119, 122-123; *Christiansen* v. *Rees* (1968) 20 Utah 2d 199 [436 P.2d 435, 436-437]; *Hundley* v. *Martinez* (1967) 151 W.Va. 977 [158 S.E.2d 159, 164]; *Spevack* v. *United States,* 390 F.2d 977, 981, 984; *Quinton* v. *United States* (5th Cir. 1962) 304 F.2d 234, 240-241; *Hungerford* v. *United States* (9th Cir. 1962) 307 F.2d 99, 102.)

[3]*Schenebeck* v. *Sterling Drug, Inc.* (E.D.Ark. 1968) 291 F.Supp. 368 is another recent decision on the applicability of the discovery rule. *Schenebeck* on the facts is on all fours with the case at bench, with the

In the recent case of *Heyer* v. *Flaig*, 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161], January 22, 1969, the court held that the statute of limitations (two years) within which an action predicated upon negligence must be brought against a lawyer, does not commence to run in favor of the lawyer and against an intended beneficiary of a will, but that in such case the limitation period ". . . starts from the date that the cause of action accrues: namely the incidence of the testatrix' death when the negligent failure . . . becomes irremedial and the impact of the injury occurs." (P. 225.)

In *Heyer*, the court at page 233 in note 7, takes pains to show how the reasoning for the relaxation and extension of the strict rule as it had originally applied to malpractice, also applies to the facts in *Heyer*.

In *Frohs* v. *Greene* (Ore. 1969) 452 P.2d 564 the Oregon Supreme Court refused to be bound by recognized exceptions to the rule as applied to medical malpractice and says in effect that fairness and common sense impel the application of the rule of discovery. In *Frohs,* plaintiff alleged penicillin injections in 1951 from which she suffered various illnesses which she did not discover although she was continuously diligent until 1965. After discovery of the reason for her physical difficulties in 1965, she brought an action within the statutory period after date of discovery.

The Oregon Supreme Court referred to an earlier case which refused to apply the discovery rule and said at page 565: ". . . [I]t is impossible to justify the applicability of the discovery rule to one kind of malpractice and not to another. . . . It is manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had an opportunity to discover that it exists. . . .

"We do not believe that the danger of spurious claims is so great as to necessitate the infliction of injustice on persons having legitimate claims which were undiscoverable by the exercise of ordinary care prior to the lapse of two years from the time of the act inflicting the injury. Nor do we believe the legislature intended such a result. We therefore overrule our former decision. . . ."

 Analysis of the cited cases indicates to us that when personal injury is suffered without perceptible trauma and by

---

exception that although plaintiff in *Schenebeck* commenced ingestion of the product in 1958, she continued ingestion until 1963. When she brought the action she was within the natural accrual date computed from 1963 on the theory of continuing tort. However, *Schenebeck* was decided on principles of discovery and not of continuing tort.

silent and insidious impregnation as a consequence of the act or omission of another, who knows, or is charged with the responsibility of knowing that such act or omission may result in personal injury, and the injured person is unaware of the cause of his injury, and as a reasonably prudent and intelligent person could not, without specialized knowledge, have been made aware of such cause, no action for tort resulting from such cause begins to accrue until the injured person knows or by the exercise of reasonable diligence should have discovered the cause of such injury.

▓ Wholly aside from the above general rule enunciated by the trend of the cases, it is clear that case law does establish that when the unawareness of injury is induced by fraud, or some other valid excuse, and there is no concurrent trauma from which the physical injury or illness may be reasonably detected, that the rule of discovery governs time of accrual.

We proceed to an analysis of the complaint before us in the light of general principles discussed.

Since the judgment before us is predicated on an order sustaining a demurrer without leave to amend, we summarize the pertinent allegations of the complaint as facts.

Appellant being pregnant, did, on April 5, 1963, consult Dr. Comer. At his direction she began, on June 15, 1963, to take one tablet of Diabenese daily and continued to do so until August 7, 1963, on which latter date she was admitted to the hospital. On August 9, 1963, she gave birth to a son. She was discharged from the hospital on August 13, 1963.

This action was filed on March 4, 1966.

"Beginning during said period of time (June 15 to August 7, 1963) that [appellant] was taking said Diabenese and at various times thereafter to and including the present time [appellant] suffered bodily ailments and side effects proximately caused by said Diabenese."

Throughout the period of time appellant ingested Diabenese, respondent represented to her that the drug was safe, fit and beneficial for her to take and she relied on such representation. No literature or warning was ever furnished to appellant regarding the harmful characteristics or dangers in the use of the medication; "at all times before March 13, 1965 [appellant] did not know or suspect, or have reason to know or suspect, that her said bodily ailments were caused by said Diabenese." On March 13, 1965, appellant consulted with one of her present attorneys regarding the cerebral palsy affliction of her son. During that consultation, appellant "by chance

happened to mention to said attorney that she had suffered bodily ailments during and subsequent to said pregnancy." The attorney asked appellant what medicines she had taken during her pregnancy. When appellant told the attorney that she had taken Diabenese for a period of approximately two months before she gave birth, he, in turn, told her that the Diabenese "might have been responsible for her said bodily ailments." That opinion of the attorney was the first time anyone had ever expressed to appellant the thought that appellant's bodily ailments during and after the pregnancy may have been caused by taking respondent's product.

Before the consultation with her attorney on March 13, 1965, appellant "did not know, or have reason to know or suspect . . . that her said bodily ailments during and after pregnancy were, or might be, related to the taking of said Diabenese."

Between the consultation with the attorney on March 13, 1965 and March 4, 1966, when appellant filed this action, she caused an investigation to be made through her attorney whereby it was "determined that said Diabenese was the probable cause of her said bodily ailments during and after said pregnancy."

Respondent knew or should have known that Diabenese was unsafe and that its use by pregnant women involved serious risk, but respondent "negligently and carelessly and intentionally and falsely failed to warn the medical profession or the public generally" of the danger or risk in the use of Diabenese. To the contrary, respondent falsely represented to the public and to the medical profession, including appellant's physician, the defendant Dr. Comer, that Diabenese was safe for use by pregnant women with the intent that Dr. Comer would rely thereon and would prescribe Diabenese to his pregnant patients and would advise them that it was safe for them to use. Thus, Dr. Comer acting in reliance upon the false representations, prescribed Diabenese for use by the appellant during her pregnancy and repeated to her the false representations made to him by the respondent, which representations were also relied on by the appellant. "As a consequence of said reliance, [appellant] . . . did not discover until on or about March 13, 1965 that her injuries forming the subject matter of this action were caused by the aforesaid negligent, false, wrongful and tortious conduct of the defendants, and each of them."

The foregoing recital makes clear that the tortious conduct

which initiated the ailments complained of commenced almost three years before the complaint was filed. The appeal before us does not involve the doctor who prescribed the Diabenese. There is no fiduciary relationship or privity of contract between appellant and respondent. The tortious conduct which initiated the injury was not a continuous breach of warranty as was the escape of gas in *Howe.* Appellant stopped ingestion of the Diabenese just prior to the delivery of her child. There is nothing to indicate that the ailments suffered by appellant from the original ingestion of the Diabenese became progressively or cumulatively worse, climaxing in an injury or illness which compelled diagnosis.

However, it is clear from the complaint that the respondent should have known Diabenese was unsafe and dangerous for pregnant women, but in spite of this implicit knowledge, respondent assured appellant's doctor that Diabenese was "safe, fit and beneficial . . ." and that said representation was made by respondent to plaintiff's doctor with the intention that her doctor would make the same representation and prescribe it for her. It is also clear that all of the Diabenese was taken exclusively at the direction of appellant's doctor, and that appellant relied on the doctor's representation to her that it was ". . . safe, fit and beneficial. . . ."

There was a complete absence of warning to appellant, her doctor, the medical profession and the public generally in respect of the harmful characteristics or dangers in the use of the medication, in spite of respondent's implicit knowledge of its dangers and that its continuing failure to advise that its use by pregnant women was negligent and intentional. The complaint also makes clear that appellant ". . . did not know or suspect or have reason to know or suspect that her . . . ailments were caused by . . . diabenese" and that appellant's first suspicion that it was, was predicated on her attorney's remark made on March 13, 1965, whereupon she immediately caused an investigation to be made, verified his opinion, and brought her action.

It appears from the facts epitomized above, that appellant's failure to act within one year from the time of the ingestion of the Diabenese was because she relied upon respondent's express representation and because of respondent's failure to give any notice of the insidious effect Diabenese could have, she did not suspect the cause of her illness until after it had been suggested to her by her attorney. In our opinion, appellant had the right to rely upon the repre-

sentation pleaded. She was lulled into a sense of security by failure of respondent to give any notice of the harmful effect of the drug. It appears, too, that all the reasons and facts for failure to discover are adequately pleaded under the well settled rule of *Lady Washington etc. Co.* v. *Wood,* 113 Cal. 482 [45 P. 809]. The statute did not commence to run against appellant until one year from discovery.

"It is not the policy of the law to unjustly deprive one of his remedy. On the other hand, if the proof shows knowledge or cause for knowledge, there is no policy which requires the protection of plaintiffs." (*Howe* v. *Pioneer Mfg. Co.,* at page 346.) Appellant should have the opportunity to prove the facts she pleads.

No special demurrer was filed to the third amended complaint. The judgment of dismissal is reversed with directions to the trial court to overrule the general demurrer and to require respondent to answer within such time as it may fix.

Fleming, J., and Wright, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 27, 1969. McComb, J., was of the opinion that the petition should be granted.