[Civ. No. 53928. Second Dist., Div. Three. Jan. 31, 1979.]

ROSE ELLEN FREDERICK et al., Plaintiffs and Appellants, v.
CALBIO PHARMACEUTICALS, Defendant and Respondent.

**COUNSEL**

Bernard Meyerson for Plaintiffs and Appellants.

Jones & Wilson and Robert L. Wilson for Defendant and Respondent.

## OPINION

**POTTER, Acting P. J.**—Plaintiffs Rose Ellen Frederick, Alan Frederick and Leslie Frederick appeal from the judgment dismissing their complaint against defendant Calbio Pharmaceuticals for damages for the wrongful death of William Frederick. The judgment was entered after defendant's demurrer was sustained with 30 days' leave to amend, and plaintiffs failed within that time to file an amended pleading.

The sole ground of demurrer was "[t]hat the complaint, and each and every cause of action thereof, is barred by the statute of limitations, namely, Section 340(3) of the California Code of Civil Procedure."

The complaint charged each defendant with having "negligently, carelessly and recklessly" caused a drug to be distributed "for experimental and investigational use without establishing the necessary safeguards and controls to prevent their distributees from administering said drug to patients," and that defendants "knew, or should [have] known that incident to the use of [said drug] was the risk of Thrombotic Complications, Myocardial Infarction and Blood Clotting." Massive doses of the drug were administered to decedent "from on or about October 28, 1974 to January 27, 1975." On January 31, 1975, "as a direct and proximate result of the said negligence or acts and omissions of Defendants, the decedent suffered a Hemorrhagic Thrombus extending into the Anterior Descending Coronary Artery from which decedent died."

The allegations of the complaint with respect to discovery of the connection between defendants' negligence and the death of the decedent were all contained in paragraph 13. It read as follows:

"The facts alleged herein as the cause of death of decedent did not become known to the Plaintiffs, neither could they by the exercise of reasonable diligence have become aware of said facts, until after the Food and Drug Administration of the United States on or about August 13, 1976 issued a press release that the said drug also known as TRIAZURE was being recalled due to incidents of Thrombosis and Blood Clotting attributed to use of said drug and it was reported that one patient died and another developed Arterial Thrombosis which resulted in amputation of the left lower leg and other incidents which were serious and constituted a pattern of danger to patients undergoing therapy with this drug."

The memorandum of points and authorities in support of the demurrer did not question the sufficiency of the allegations of paragraph 13 to show circumstances excusing delayed discovery of the cause of decedent's death. Instead, defendant relied exclusively on the proposition that the one-year limitation period for wrongful death actions (other than "causes of action for 'professional negligence' against 'health care providers' as those terms are defined in § 340(5) of the Code of Civil Procedure") "must be instituted within one year from the date of death." Defendant argued: "There is no reported case involving death where the exception[1] delaying accrual of the cause of action was permitted. If the Court permits a wrongful death case to be asserted against defendant herein because (as is alleged in paragraphs 13 and 14 of the complaint) the plaintiffs did not learn of the hazards of Azaribine prior to an FDA press release dated August 13, 1976, then there would be no viable limitations period available to a drug manufacturer."

The order sustaining the demurrer read: "Demurrer is sustained on ground set forth therein."

### Contentions

Plaintiffs contend that (1) the one-year limitation specified in Code of Civil Procedure section 340, subdivision 3, for wrongful death actions does not commence to run until the wrongful death heirs discover or should have discovered their injury in the form of the death of their decedent and its negligence cause, and (2) the complaint pleaded sufficient facts to justify delayed accrual. Defendant contends that (1) wrongful death actions (other than those for "professional negligence" against "health care providers") must in all events be brought within one year from the date of death, and (2) the allegations of the complaint are inadequate to justify delayed discovery.

### Discussion

#### Summary

■ A wrongful death action against a manufacturer based upon negligence or products liability comes within the rule that a plaintiff who

---

[1]The exception referred to is the rule applicable in products liability cases where "the pathological effect occurs without perceptible trauma and the victim is 'blamelessly ignorant' of the cause of injury" in which case "the statute of limitations does not begin to run until the person knows or, by the exercise of reasonable diligence, should have discovered the cause of injury." (*G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 25 [122 Cal.Rptr. 218].)

is "blamelessly ignorant" of his cause of action is not barred by his delay in bringing suit; the one-year period to file suit, therefore, commences on the date on which the plaintiff discovers, or should have discovered, his injury in the form of the death of his decedent and its tortious cause. The allegations of the complaint adequately pleaded the circumstances under which plaintiffs discovered the negligent cause of the decedent's injury. Additional facts might have been pleaded explaining the conclusory allegation that plaintiffs could not "by the exercise of reasonable diligence have become aware of said facts" but defendant did not urge that deficiency as the basis for its demurrer. Consequently, plaintiffs had no meaningful opportunity to amend to meet this objection, and the judgment should not be affirmed on that basis.

*The One-Year Limitation for Wrongful Death Actions Does Not Commence to Run Until Wrongful Death Heirs Have Discovered, or Should Have Discovered, Their Injury in the Form of Death of Their Decedent and Its Negligent Cause*

Defendant's contention that the one-year statute of limitations on wrongful death actions provided by Code of Civil Procedure section 340, subdivision 3, in all events commences to run on the death of the decedent is contrary to well-established California authority and is unsupported by any of the authorities cited.

Defendant's reliance on the annotation in (1964) 97 A.L.R.2d 1151 is misplaced. Though that annotation states the general rule that "the action must be instituted within the statutory period from the date of death" (*id.,* at p. 1154), the scope of the annotation is stated as follows (*id.,* at p. 1153): "The aim is only to elucidate questions as to when the period of limitation *normally begins to run.* No attempt is made to cover matters of disability or to treat special provisions delaying the normal initiation of the limitation period under particular circumstances." (Italics added.)

The same is true of *Frost* v. *State of California* (1966) 247 Cal.App.2d 378, 382 [55 Cal.Rptr. 652]; it merely stated that a "cause of action for wrongful death arose on the date of death" under the circumstances of that case, which did not involve any claim of delayed discovery of the cause of the death.

 Except in the case of wrongful death claims for "professional negligence" against "a health care provider," governed by Code of Civil

Procedure section 340.5,[2] the statute of limitations applicable to wrongful death actions is Code of Civil Procedure section 340, subdivision 3, specifically referring to actions "for injury to or for the death of one caused by the wrongful act or neglect of another . . . ." Section 340, subdivision 3, does not specify when the one-year period commences. ▮ However, since no cause of action for wrongful death can exist until the death of the decedent and it "is an entirely new cause of action created in the heirs and based on the death of the decedent as that death inflicted injury upon them" (*Larcher* v. *Wanless* (1976) 18 Cal.3d 646, 656-657 [135 Cal.Rptr. 75, 557 P.2d 507]), the earliest date that the one-year period could start would be the date of death.

Since 1905, Code of Civil Procedure section 340 has included wrongful death actions along with "other actions such as libel, slander and the like" in a "general statute of limitations." (*Wohlgemuth* v. *Meyer* (1956) 139 Cal.App.2d 326, 328 [293 P.2d 816].) Concerning the effect of this inclusion, the *Wohlgemuth* court said (*id.*, at p. 329): " 'That intendment, manifestly, is to place the right of action accorded by section 377 in the category of other causes, and *to apply the statute of limitations to that action in manner and substance as applied to all other civil actions,* treating it as a part of the remedy only, and not as a condition to the cause.' " (Italics added.) Consequently, any general rule deferring commencement of the one-year period specified in Code of Civil Procedure section 340, subdivision 3, applicable to personal injury actions is likewise applicable to wrongful death claims. On that basis, the court in *Wohlgemuth* upheld the wrongful death heir's right to rely upon the fact that he "with due diligence could not have ascertained and did not ascertain defendants' negligence" (139 Cal.App.2d at p. 330) until a date within one year from the date of filing, saying (*id.*, at p. 331): " 'It is a further settled rule in malpractice cases that the statute of limitations only starts to run from the date of discovery of, or the date when by the exercise of reasonable diligence the plaintiff should have discovered, the wrongful act.' . . ."

The rule in malpractice cases so referred to was merely a specific application of a more general rule deferring commencement of the

---

[2]Defendant does not qualify as a "health care provider" as that term is defined in Code of Civil Procedure section 340.5 which governs both personal injury and wrongful death suits against such defendants. At the time of filing of the complaint herein, the current form of section 340.5 was in effect; this provides an alternative period of limitations of "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."

statutory period where the plaintiff was "blamelessly ignorant" of the negligent cause of his injury.

The seminal case injecting this principle into negligence law in California was *Huysman* v. *Kirsch* (1936) 6 Cal.2d 302 [57 P.2d 908]. The judgment for defendant, rendered after the sustaining of an objection to the introduction of any evidence on the ground that the complaint showed on its face that it was barred by the one-year provision of Code of Civil Procedure section 340, was reversed. It was a medical malpractice action and several grounds for deferring the commencement of the one-year period until plaintiff had discovered the doctor's negligent failure to remove a drainage tube from plaintiff's incision were stated. The theory which launched the doctrine of deferred discovery, however, was an analogy to a California worker's compensation rule holding that the limitation period for commencing proceedings for compensation did not commence in a case of silicosis occasioned by long industrial exposure until "the employees became aware that their injuries were due to such exposure, or when by the exercise of reasonable care and diligence they might have ascertained that fact." (6 Cal.2d at p. 312.)

In a later case involving a negligence claim under the Federal Employers' Liability Act (*Coots* v. *Southern Pacific Co.* (1958) 49 Cal.2d 805 [322 P.2d 460], our Supreme Court deferred operation of the federal three-year limitation until the employee had discovered facts indicating that his dermatitis (caused by industrial cyanide exposure) was sufficiently severe to give notice that it "would lead to disability." (*Id.,* at p. 810.) In reaching its conclusion, our Supreme Court cited the decision of the United States Supreme Court in *Urie* v. *Thompson* (1949) 337 U.S. 163 [93 L.Ed. 1282, 69 S.Ct. 1018], adopting the rule that the statute of limitations did not run while the plaintiff remained in a state of "blameless ignorance" of the industrial cause of his silicosis. Our Supreme Court further noted that the United States Supreme Court decision was based in part upon the same California rule applicable in worker's compensation cases relied upon in *Huysman.*

The applicability of this rule in products liability actions was recently stated in *G. D. Searle & Co.* v. *Superior Court, supra,* 49 Cal.App.3d at pages 25-26, as follows: "Personal injury actions based upon products liability are governed by the one-year period of limitations prescribed by Code of Civil Procedure section 340, subdivision 3. (*Warrington* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 564-566 [80 Cal.Rptr. 130]; *Howe* v. *Pioneer Mfg. Co.* (1968) 262 Cal.App.2d 330-339 [68 Cal.Rptr.

617]; Cotchett & Cartwright, Cal. Products Liability Actions, § 8.02.) Generally, a personal injury claim accrues and the period of limitations commences when the wrongful act takes place. An exception is presented when the pathological effect occurs without perceptible trauma and the victim is 'blamelessly ignorant' of the cause of injury; in that case, the statute of limitations does not begin to run until the person knows or, by the exercise of reasonable diligence, should have discovered the cause of injury. (*Coots* v. *Southern Pacific Co.* (1958) 49 Cal.2d 805 [322 P.2d 460]; *Warrington* v. *Charles Pfizer & Co., supra,* 274 Cal.App.2d at pp. 567-571; *Anderson* v. *Southern Pac. Co.* (1964) 231 Cal.App.2d 233, 240 [41 Cal.Rptr. 743]; see Note, 4 A.L.R.3d 821.)"

It is apparent from the foregoing that the exception applicable to the "blamelessly ignorant" plaintiff, which applies in products liability cases, is the same exception which favors the "blamelessly ignorant" plaintiff in a medical malpractice suit or in a Federal Employers' Liability Act suit. The same principle requires deferring commencement of the statutory period, regardless of whether the suit is based upon medical malpractice, employers' liability or products liability. If the exception has been found applicable to wrongful death claims in any of these categories, then there is no logical basis to deny its application in wrongful death suits in any other category.

The exception in favor of the "blamelessly ignorant" plaintiff has been found applicable in wrongful death actions based on medical malpractice. Such was the holding in *Wohlgemuth* v. *Meyer, supra,* 139 Cal.App.2d 326. The holding in *Wohlgemuth* was expressly recognized and approved by our Supreme Court in the decision in *Larcher* v. *Wanless, supra,* 18 Cal.3d 646, where it is cited for the proposition that prior to the enactment of Code of Civil Procedure section 340.5 in 1970, "it was well established" that the statute of limitations for wrongful death actions commenced "in medical malpractice cases, on the discovery of that death's negligent cause. (*Wohlgemuth* v. *Meyer* (1956) *supra,* 139 Cal.App.2d 326)." (18 Cal.3d at p. 656.) Our Supreme Court further observed that "the prior discovery rule gave plaintiffs one year to file suit measured from the date on which they discovered or should have discovered their 'injury' in the form of the death of their decedent *and its negligent cause.*" (*Id.,* at pp. 657-658.) (Italics added.)

The court noted that the occasion for the passage of section 340.5 was "[c]oncern that this 'open-ended' statute of limitations was contributing to

the costs of medical malpractice insurance . . . . (See Comment (1974) 2 Pacific L.J. 663, 667-671)" (*id.*, at p. 655), and that to ameliorate this concern, the original 1970 version of section 340.5 provided an "overall four-year limitation period beginning with the date of that 'injury' [death of decedent]." (18 Cal.3d at p. 658.)

The medical malpractice insurance crisis which motivated passage of section 340.5 apparently did not extend to products liability insurance coverage. At least the Legislature made no attempt to close the "open-ended" statute of limitations insofar as it was applicable to such claims. ▮ Section 340.5 "is an attempt to limit the period within which a suit for malpractice might be brought to a maximum of four years . . . ." (2 Pacific L.J. 663, *supra,* at p. 671.) Such limitation is, however, expressly limited in the language of that section to actions against health care providers based upon alleged professional negligence as therein defined. Other personal injury and wrongful death actions remain subject to the "prior discovery rule."

▮ It is thus clear that if plaintiffs have adequately alleged facts excusing their delayed discovery of the negligent cause of their decedent's death, their claim is not barred by the one-year period commencing with his death.

*Plaintiffs' Claims Can Be
Brought Within the Exception*

The allegations of the complaint adequately show that pathological effects occurred without perceptible trauma. According to the complaint, decedent was administered defendant's drug for a period of several weeks and died of a coronary thrombosis four days after the last "consumption." Though such a death doubtless was traumatic to plaintiffs, they did not then have reason to suspect any perceptible relationship between the administration of the drug and the death. The situation clearly came within the scope of the circumstances under which "blameless ignorance" may operate to toll the statute of limitations, as described by this court in *Warrington* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 564, 569-570 [80 Cal.Rptr. 130], where the court said: "Analysis of the cited cases indicates to us that when personal injury is suffered *without perceptible trauma and by silent and insidious impregnation as a consequence of the act or omission of another,* who knows, or is charged with the responsibility of knowing that such act or omission may result in personal injury, and the injured person is unaware of the cause of his injury, and as a reasonably

prudent and intelligent person could not, without specialized knowledge, have been made aware of such cause, no action for tort resulting from such cause begins to accrue until the injured person knows or by the exercise of reasonable diligence should have discovered the cause of such injury." (Italics added.)

Coronary thrombosis is a leading cause of natural death and totally lacks any connotation of the intervention of any immediate outside cause. Consequently, if plaintiffs were "blamelessly ignorant" of the alleged causal connection between the administration of defendant's drug and the thrombosis, the statute of limitations did not run until such ignorance was dispelled. They were not subject to the rule applicable in the case of ordinary traumatic injuries epitomized by *Baker* v. *Beech Aircraft Corp.* (1974) 39 Cal.App.3d 315, 321 [114 Cal.Rptr. 171], requiring fraudulent concealment, and were instead entitled to the benefits of the rule stated in *G. D. Searle & Co.* v. *Superior Court, supra,* 49 Cal.App.3d at page 25, that "the statute of limitations does not begin to run until the person knows or, by the exercise of reasonable diligence, should have discovered the cause of injury." ■ Under the latter rule, however, "[a] plaintiff who relies on this exception must plead facts justifying delayed accrual; the complaint must allege (1) the time and manner of discovery and (2) the circumstances excusing delayed discovery." (*Id.,* at p. 26.)

■ There is no question that plaintiffs complied with requirement (1). Paragraph 13 of the complaint describes the issuance of a press release by the Food and Drug Administration of the United States on August 13, 1976, advising that the drug was being recalled by virtue of incidence of thrombosis being caused by its use. The circumstances excusing delayed discovery (requirement (2)) are, however, not set forth. It is only stated that plaintiffs could not "by the exercise of reasonable diligence have become aware of said facts" concerning the risk of thrombotic complications. Some facts could have been alleged in this respect. For example, plaintiffs could have alleged that they are lay persons without medical knowledge, that no one personally advised them of the risk, that no medical treatise disclosing such risk came to their attention, and that there was no general public dissemination of warnings specifying the risk prior to the recall.[3]

---

[3]It is, of course, difficult to imagine the existence of material of the latter two categories antedating the Food and Drug Administration recall without assuming total incompetence of that agency.

It is not, however, appropriate under the circumstances of this case to uphold the judgment on the basis of this deficiency. In the trial court, defendant completely failed to point out any such deficiency in the allegations of the complaint. It relied, instead, upon the proposition that the one-year statute of limitations applicable to wrongful death actions (except malpractice actions) commenced with the date of the decedent's death and that no exception delaying accrual of the cause of action was permitted on the basis that the victim was "blamelessly ignorant." The order sustaining the demurrer on the grounds set forth therein did not advise plaintiffs that a more specific statement of the circumstances excusing delayed discovery was required. They did not, therefore, have a meaningful opportunity to amend in this respect, and it would be unjust to dispose of the litigation adversely to them without affording them such opportunity. Consequently, the judgment for defendant must be reversed; however, such reversal is without prejudice to defendant's challenging the sufficiency of the allegations of the circumstances purporting to excuse delayed discovery.

### Disposition

The judgment is reversed and the cause is remanded for further proceedings consistent with the views above expressed.

Cobey, J., and Allport, J., concurred.