[Civ. No. 23428. Third Dist. Feb. 28, 1985.]

TERRY SNOW, Plaintiff and Appellant, v.
A. H. ROBINS COMPANY, INC., Defendant and Respondent.

COUNSEL

John M. Anton, Rodney A. Klein, Anthony J. Klein and Klein, Wegis & Duggan for Plaintiff and Appellant.

Russell J. Callison and Memering, DeMers, Honer, Varanini, Hurst & Crowle for Defendant and Respondent.

OPINION

**REGAN, Acting P. J.**—Terry Snow (plaintiff) appeals from an order granting summary judgment in favor of defendant corporation. The order was based on plaintiff's failure to bring an action within the one-year period prescribed as the statute of limitations for personal injury actions. In 1974 plaintiff had suffered from an unwanted pregnancy and resulting therapeutic abortion after having an intrauterine device known as the Dalkon Shield inserted for contraception. In 1982 she filed a complaint for personal injuries, alleging, inter alia, that A. H. Robins Company (Robins) fraudulently misrepresented pregnancy rates occurring with the Dalkon Shield in situ and wrongfully concealed actual higher pregnancy rates. She did not learn of the possibility of fraud until observing a "60 Minutes" television broadcast in April 1981.

■ An order granting a motion for summary judgment is a nonappealable order, as it is not the final judgment. (Code Civ. Proc., § 904.1[1]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 59, pp. 4074-4075.) However, as the instant order appears to be a final disposition in fact granting judgment, and in the interests of judicial economy, we shall treat the order as a judgment. (*Nystrom* v. *First Nat. Bank of Fresno* (1978) 81 Cal.App.3d 759, 762-763 [146 Cal.Rptr. 711].)

We hold plaintiff is barred by the statute of limitations from pursuing her cause of action for injuries caused by the Dalkon Shield, but under her cause of action for injuries caused by defendants' fraudulent concealment and misrepresentation of pregnancy rates, she is entitled to the benefit of the rule tolling the statute until the discovery of facts constituting fraud. As there are triable issues of fact concerning such a cause of action, summary judgment is not appropriate. We vacate the order granting the summary judgment, and remand the matter to the trial court.

---

[1]All statutory references are to the Code of Civil Procedure.

## FACTS

Plaintiff requested and had inserted an intrauterine contraceptive device (IUD) known as the Dalkon Shield in May 1973 at the National Health Service Clinic in Isleton. The IUD was inserted by Dr. James Rushing and had been highly recommended to plaintiff by the clinic's nurse practitioner. Plaintiff was told the Dalkon Shield was "almost as effective as the birth control pill." She understood this to mean a pregnancy rate of 1 or 2 percent. She understood that pregnancy was possible in that the device was not foolproof.

In September of 1974 Terry missed a menstrual period, sought medical evaluation, and learned she had become pregnant with the IUD in place. Plaintiff was told by nurse practitioner Shirley Rigg that she must undergo a therapeutic abortion because of a "risk of blood poisoning" which could occur in a pregnancy with any type of IUD in place. Plaintiff was referred to Dr. John Allen for the purpose of having a therapeutic abortion.

After examining Terry, Dr. Allen stated that there was no blood poisoning in her case and he reassured her, telling her she could leave the IUD in place and the baby would probably be born "with the Dalkon Shield on its forehead." However, he removed the Dalkon Shield on September 11, 1974. At plaintiff's request, Dr. Allen performed a therapeutic abortion on plaintiff on September 16, 1974.

On April 19, 1981, plaintiff and her husband watched an episode of the CBS-TV broadcast "60 Minutes" in which the Dalkon Shield controversy was featured. From that broadcast, she concluded: (1) the manufacturer of the Dalkon Shield had concealed the side effects of the IUD and (2) that its actual pregnancy rate was higher than what she had originally thought it to be. Within one year of learning facts featured in the "60 Minutes" program, she filed the present action.

Plaintiff testified that neither Dr. Allen nor anyone else had advised her that the device was either defective or overpromoted by its manufacturer. She knew only that she had become pregnant with the IUD in place. She testified she did not think the IUD made her pregnant; "it just failed to prevent" her pregnancy, and she considered herself merely "unlucky."

On October 4, 1974, plaintiff returned to Dr. Allen for purposes of obtaining another form of contraception. Dr. Allen prescribed birth control pills for her at that time. When asked if she recalled why she elected to take birth control pills after the abortion, plaintiff testified it was "[b]ecause the IUD made me have to have an abortion."

On April 15, 1982, plaintiff filed a complaint alleging seven different causes of action, including negligence, strict products liability, breach of warranty, civil conspiracy, fraud, and loss of consortium by her husband. Defendant Robins raised several affirmative defenses, including the effect of section 340, subdivision (3), a one-year statute of limitations for the commencement of personal injury actions. The trial court ruled the facts permitted but one conclusion: that whatever claim plaintiff may have had against defendant arose nearly eight years prior to the date on which plaintiff filed her complaint. The trial court granted Robins' motion for summary judgment, and entered its order on August 23, 1983.

## DISCUSSION

### I

■ The general rule is that the statute of limitations begins to run when the wrongful act is done, even though the plaintiff is ignorant of his or her cause of action or of the identity of the wrongdoer. (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, §§ 263-264, pp. 1116-1117; see *Lattin* v. *Gillette* (1892) 95 Cal. 317, 319-320 [30 P. 545].) However, there is a definite trend toward a rule that the cause of action may accrue on "discovery of facts," and away from the stricter rule. (*Warrington* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 564, 567 [80 Cal.Rptr. 130]; see fn. 2 for comprehensive case list for trend toward discovery rule in personal injury cases.) The delayed accrual postpones the running of the statute of limitations on certain causes of action until the time of discovery of the facts. Such causes include, inter alia, actions based on fraud (§ 338, subd. 4), and actions based on progressively developing or continuing wrongs where the nature, extent or permanence of the harm are difficult to discover. (*Marsh* v. *Ind. Acc. Com.* (1933) 217 Cal. 338, 351 [18 P.2d 933, 86 A.L.R. 563]; see generally 2 Witkin, Cal. Procedure, Actions, *op. cit. supra,* §§ 267, 315, at pp. 1118, 1158, respectively.)

Plaintiff urges consideration of a rule stated in *Warrington, supra,* 274 Cal.App.2d at page 570, i.e., when a personal injury is suffered without perceptible trauma, and the injured person is unaware of the cause of his or her injury, and as a reasonably prudent and intelligent person he or she could not, without specialized knowledge, have been made aware of such cause, "no action for tort . . . begins to accrue until the injured person knows or by the exercise of reasonable diligence should have discovered the cause of such injury." We shall discuss the applicability of this holding.

■ With respect to actions based on fraud, the statute of limitations is tolled whenever plaintiff is able to show the defendant fraudulently con-

cealed facts which would have led him to discover his potential cause of action. (*Pashley* v. *Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 231-232 [153 P.2d 325].) In *Pashley,* the Supreme Court concluded: "[¶] Technical rules as to when a cause of action accrues apply therefore only in those cases which are free from fraud committed by the defendant. Said section 338, subdivision 4, . . . recognizes the nonapplicability of those technical rules where the fraud of the defendant may be so concealed that in the absence of circumstances imposing greater diligence on the plaintiff, the cause of action is deemed not to accrue until the fraud is discovered. Otherwise, in such cases, the defendant by concealing his fraud, would effectively block recovery by the plaintiff because of the intervention of the statute of limitations." (*Id.,* at p. 232.)

Once a belated discovery is properly pleaded, the question becomes whether the failure to discover earlier the injury and its negligent cause was justifiable and reasonable so as to prevent the running of the statute of limitations. (*Dujardin* v. *Ventura County Gen. Hosp.* (1977) 69 Cal.App.3d 350, 356 [138 Cal.Rptr. 20].) ■ Because the question of belated discovery depends on facts and circumstances concerning the injury and discovery, it is an issue for the trier of fact to decide. However, whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law. (*Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 665 [150 Cal.Rptr. 384, 12 A.L.R.4th 27].)

■ On appeal, we must determine whether the trial court could determine as a matter of law that the failure to discover earlier the cause of action was due to plaintiff's failure to act with reasonable diligence. (*Dujardin, supra,* 69 Cal.App.3d at p. 356.) Further, we must determine whether the trial court correctly applied the reasonable diligence test to each and every cause of action pled. As we discuss *infra,* plaintiff's causes of action for injuries resulting from defendants' fraudulent concealment and intentional misrepresentation may in fact permit the application of the discovery rule, where the causes of action predicated on personal injuries caused by the IUD do not permit such an application. We shall discuss the injuries as caused by the IUD first.

## II

■ Robins contends reasonable minds could not differ that in 1974 plaintiff was fully aware she had an unwanted pregnancy with the Dalkon Shield in situ, and as a result thereof underwent an elective therapeutic abortion. Robins contends the cause of action accrued at that time because plaintiff knew or by the exercise of reasonable diligence should have discovered her cause of action. (*Gray* v. *Reeves* (1977) 76 Cal.App.3d 567,

576 [142 Cal.Rptr. 716].) The record demonstrates plaintiff pleaded in her complaint that she was aware in 1974 of the injury she received in that year; she stated in her deposition that, after the abortion, she did not want to use an IUD for contraception because "the IUD made me have to have an abortion."

We agree with Robins that plaintiff is barred by the one-year statute of limitations set forth in section 340, subdivision (3), from pursuing an action for personal injury caused by the Dalkon Shield. Plaintiff's deposition statement quoted previously demonstrates she was fully aware *in 1974* that she had an unwanted pregnancy with the Dalkon Shield in situ, and as a result thereof underwent an elective therapeutic abortion. In short, she viewed the IUD as responsible for the abortion, even if she did not view the IUD as responsible for the failure to prevent pregnancy. Because she viewed the IUD as responsible for her ultimate injuries, she knew or by the exercise of reasonable diligence should have discovered her cause of action for personal injuries caused by the IUD. (*Gray* v. *Reeves, supra,* 76 Cal.App.3d, at p. 576.) It is clear to us that reasonable minds can draw only one conclusion from the evidence in this respect: plaintiff's failure to discover earlier her cause of action for injuries caused by the IUD was due to her failure to act with reasonable diligence. (*Dujardin* v. *Ventura County Gen. Hosp., supra,* 69 Cal.App.3d, at p. 356.)

■ We have stated the " 'test is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his or her investigation.' [Citations.] If plaintiff believes because of injuries she has suffered that someone has done something wrong, such a fact is sufficient to alert a plaintiff 'to the necessity for investigation and pursuit of her remedies.' [Citations.]" (*Graham* v. *Hansen* (1982) 128 Cal.App.3d 965, 972-973 [180 Cal.Rptr. 604].)[2]

■ We believe the *Graham* test should be applied to the instant case. The record demonstrates plaintiff knew or by the exercise of reasonable diligence could have discovered her cause of action against defendant for the injuries as an undesirable side effect of the Dalkon Shield. ■ ■ ■
■ Since the danger of an abortion in the event of an unwanted pregnancy was not a matter she learned or discussed at the time of the placing of the IUD, it was an unusual enough circumstance to put her on notice that the

---

[2]In *Graham* v. *Hansen,* the plaintiff had agreed to an internal gastric photographic examination to be performed on an outpatient basis. She suffered a perforated esophagus— circumstances giving notice "that someone has done something wrong." (*Id.,* at p. 973.)

IUD was either defective or not safe.[3] ■ An abortion is an event sufficient to alert a victim of unwanted pregnancy while using an IUD " 'to the necessity for investigation and pursuit of her remedies.' " (*Graham* v. *Hansen, supra,* 128 Cal.App.3d at p. 973.)

Additionally, in such unanticipated and unexpected circumstances as an unwanted pregnancy and resulting abortion, it is facially apparent "that someone has done something wrong." (*Id.,* at p. 973.) Neither an unwanted pregnancy nor an abortion constitutes a silent, invidious or progressive disease, or an injury suffered without perceptible trauma (*Warrington* v. *Charles Pfizer & Co., supra,* 274 Cal.App.2d at p. 570), in that neither are matters where the nature, extent or permanence of the harm are difficult to discover. (*Marsh* v. *Ind. Acc. Com., supra,* 217 Cal. at p. 351.) Thus, the discovery rules in *Warrington* and *Marsh* are inapposite here.

Robins urges we consider a factually similar case in *Sydney-Vinstein* v. *A.H. Robins Co.* (9th Cir. 1983) 697 F.2d 880, involving a plaintiff suffering an unwanted pregnancy with a Dalkon Shield in situ and a subsequent therapeutic abortion. In that case, the Ninth Circuit noted the plaintiff admitted in her deposition that she knew at the time of the injury the Dalkon Shield had perforated her uterus and caused an infection. Thus, the court stated it was her burden to determine whether and whom to sue within the statutory period. The court found the limitations clock began to run at the latest when A. H. Robins Company warned physicians of the possible danger associated with the Dalkon Shield and removed the product from the market. (*Id.,* at pp. 882-884.) ■ Certainly, for an injury for which a plaintiff has no expectation, such as a perforated uterus in *Sydney-Vinstein,* or an abortion in the instant case, the plaintiff is on notice to sue. "In the absence of fraudulent concealment it is plaintiff's burden within the statutory period, to determine whether and whom to sue." (*Davis* v. *United States* (9th Cir. 1981) 642 F.2d 320, 332-333, as cited in *Sydney-Vinstein* v. *A. H. Robins Co., supra,* 697 F.2d at pp. 883-884.)

■ Insofar as the instant plaintiff pled her injuries were caused by the Dalkon Shield based on its design or lack of safety, or by Robins' negligence, failure to warn or breach of implied warranty in the development,

---

[3]Plaintiff's reliance on the doctrine of physician reassurance is misplaced. That doctrine states a patient is entitled to rely on the physician's skill and judgment while under his care and that the degree of diligence required of a patient in ferreting out the negligent causes of his condition is diminished. (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 103 [132 Cal.Rptr. 657, 553 P.2d 1129].) Here, however, Dr. Allen only reassured plaintiff not to worry about having a birth with the IUD in situ. In requesting the abortion, plaintiff relied on the risk of blood poisoning she learned from a nurse practitioner, and she acted *against* the reassurance of the physician. She clearly did not rely on the physician's reassurance, and in not doing so, she had even more reason to investigate her cause of action.

manufacturing, testing, distribution, sale and advertising of the Dalkon Shield, she had information in 1974 sufficient to put a reasonable person on notice to pursue her remedies. Therefore, we conclude plaintiff is not entitled to the discovery-of-facts rule in order to accrue her cause of action for her injuries. Under section 340, subdivision 3, she had one year after the abortion to determine whether and whom to sue. She cannot come eight years later to pursue these causes of action for injuries based on the unsafe nature of the Dalkon Shield when she knew in 1974 it was responsible for the abortion.

## III

Plaintiff also pled she was defrauded by Robins, which proximately caused her injuries. Thus, we are presented with a novel question of causation in this case. It is clear to us that the fraudulent concealment and intentional misrepresentation alleged in plaintiff's fourth and fifth causes of action constitute a *different wrong* than the negligence and breach torts asserted in her first, second and third causes of action. As such, the fraud is a concurrent cause of the injuries, and one which presents triable issues of fact for which summary judgment is not appropriate. (See § 437c, subd. (c).) Fraud may excuse lack of diligence on the part of plaintiff to pursue an action, and thus, the discovery-of-facts rule allows her cause of action to accrue. We look first to her pleadings, and then turn to the question of causation.

In her fourth cause of action, plaintiff incorporated the introductory paragraphs of the complaint, setting forth jurisdictional facts, the parties, the facts concerning the placement of the IUD by the physician, and the subsequent injuries. Paragraph X, one of those incorporated into the fourth cause of action, states: "As a direct and proximate result of the negligence of the defendants, . . . the plaintiff developed serious medical problems proximately caused by the Dalkon Shield in her uterus, including but not limited to, a pregnancy with the Dalkon Shield in situ, resulting in total abdominal abortion in September of 1974, which medical problems caused and are causing permanent physical and emotional damages to the plaintiff." Despite the incorporated language asserting the medical problems are a direct and proximate result of the negligence of defendants, the fifth paragraph of the fourth cause of action alleges the problems are a proximate result of the fraud. It states: "As a proximate result of the aforesaid false and fraudulent representations which said defendants, . . . knew to be false and fraudulent at the time they were made, plaintiff has been injured and damaged in a sum within the jurisdictional limits of this court."

According to the record, then, plaintiff has adequately pled her injuries were *caused by the alleged fraud.* The fraud alleged in plaintiff's fourth

cause of action was that "defendants, . . . falsely, fraudulently, and with the intent to deceive and defraud the plaintiff and plaintiff's agents [her physician and nurse], conspired to represent to plaintiff and plaintiff's agents that the Dalkon Shield was a superior intrauterine device with fewer side effects than other competing intrauterine devices and with the lowest rate of failure of any other intrauterine device on the market. [¶] . . . All of these misrepresentations were false and were known to be false by defendant, when made, and in truth and fact, said Dalkon Shield had a high rate of failure for contraception purposes and was unsafe and unfit for use as a contraceptive device." In plaintiff's fifth cause of action, she alleged: "Said defendants, . . . possessed knowledge of a pregnancy rate with the use of said device which was significantly greater than that which they disclosed to plaintiff and plaintiff's agents. Defendants, . . . maliciously, fraudulently, willfully, oppressively, and wantonly failed to disclose the same to plaintiff and plaintiff's agents." Plaintiff alleged she and her physician relied on the alleged false representations and she was thus induced to use the Dalkon Shield as a contraceptive device.

■ The first element of legal cause is "cause in fact." It is necessary to show a defendant's conduct contributed in some way to the injury, so that "but for" that defendant's conduct the injury would not have been sustained. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 622, at p. 2903.) The rule is expressed another way by stating a defendant's conduct is a cause of the event if it is a material element and a "substantial factor" in bringing it about. (Prosser, Torts (5th ed. 1984) § 41, at pp. 239-240.)

Whether a defendant should be legally responsible for an injury, however, is affected by the notion of proximate cause. The doctrine of proximate cause limits liability, where, for example, an independent intervening act not reasonably foreseeable affects the events leading to the injury. (See 4 Witkin, Summary of Cal. Law, Torts, *op. cit. supra,* § 622, at p. 2904.) We must ask whether that defendant was under a duty to protect the plaintiff against the event which did in fact occur. (Prosser, Torts, *op. cit. supra,* § 42, at pp. 274.)

There may be more than one cause of an injury, and a defendant may be responsible for more than one. In most multiple cause or concurrent cause cases, there are joint tortfeasors, and the "but for" test has less utility as we attempt to determine whether either one of the causes, operating alone, would have been sufficient to cause the identical result. (Prosser, Torts, *op. cit. supra,* § 41 at p. 267.) In such cases, the "substantial factor" formula has greater utility. (*Id.,* at p. 240.) We are confronted in the instant case with the possibility the injuries were in fact caused by (1) Robins' negligent

or intentional design, manufacture and sale of a defective IUD or (2) Robins' fraudulent concealment of actual pregnancy rates, and misrepresentation of these rates. As alleged they are two separate wrongs.

Applying the tests of causation discussed above, and subject to proof, we may conclude "but for" the defective IUD, plaintiff would not have become pregnant, and "but for" the unwanted pregnancy, plaintiff would not have sought guidance or been exposed to the advice for an abortion to avoid the risk of blood poisoning, and "but for" that advice, she would not have suffered the abortion. Similarly, we may conclude "but for" the fraudulent concealment of pregnancy rates, plaintiff would not have used the Dalkon Shield for contraception, and the chain of events leading to her injuries would not have occurred. Heeding Prosser, we note either cause, operating alone, may have been sufficient to engender the injury. (Prosser, Torts, *op. cit. supra,* § 41, p. 267.) Applying the "substantial factor" test, we have no difficulty in envisioning, subject to proof, either cause as a substantial factor in bringing about the injury. Thus, we conclude the instant plaintiff is entitled to assert different causes of action based on different causes in fact. Plaintiff's allegation of fraudulent concealment is not simply another legal theory in which to frame her claim for injuries caused by Robins. It is a separate and distinguishable claim of a tort resulting in the same injury she claims to have suffered as a result of defendant's negligent design and manufacture of the Dalkon Shield. We have concluded she is barred from pursuing the action based on the defective nature of the IUD, but a different standard applies to her claim based on fraud.

The allegations presented by plaintiff,[4] if true, would constitute a material concealment or misrepresentation amounting to "fraud sufficient to entitle the party injured thereby to an action." (*Pashley* v. *Pacific Elec. Ry. Co., supra,* 25 Cal.2d 226 at p. 235.) Any false representation designed to conceal facts known to Robins and which consequently hindered plaintiff from bringing action until after the running of the statutory period of limitations as to that injury, amounts to fraud upon plaintiff and excuses any greater diligence on her part. (*Ibid.*)

Robins contends plaintiff's allegations of fraudulent concealment relate to her decision to use the IUD in 1973, and she was not hindered

---

[4]Plaintiff provided a 423-page memorandum of points and authorities, with exhibits, in opposition to the motion for summary judgment, and she reprints 16 of those pages in her opening brief, outlining allegations of fraudulent concealment and misrepresentations concerning, principally, the actual unwanted pregnancy rates associated with the Dalkon Shield. This includes reviews of United States Senate hearings, university hospital studies, industrial memoranda, deposition testimony, marketing data, labelling procedures, clinical experiences, obstetrical and gynecological conference and physician analyses, and Food and Drug Administration hearings and final actions.

from bringing an action within the statutory period commencing at that time. We disagree. Plaintiff clearly was hindered from pursuing a cause of action for relief based on fraudulent concealment and misrepresentation of pregnancy rates. It is painfully obvious to us plaintiff could not bring an action for fraudulent concealment of information until she learned of the possibility of any fraudulent concealment.

Plaintiff in fact stated a cause of action for civil conspiracy based on fraud. However, we have held "[t]here is no cause of action for civil conspiracy itself; an actionable wrong that is the *subject* of the conspiracy must be alleged in order to state a cause of action." (*Kenworthy* v. *Brown* (1967) 248 Cal.App.2d 298, 301 [56 Cal.Rptr. 461].)

The actionable wrong plaintiff asserts is fraudulent concealment of the pregnancy rates, which she alleges is a direct and proximate cause of her injuries. As we regard the actionable wrong to be the fraudulent concealment and misrepresentation, and since any inducement to use the IUD is pled as a consequence of the wrong and not as the wrong itself, we conclude the rules concerning the running of the statute of limitations for fraud apply to the cause of action for fraudulent concealment here.

The circumstances of this case demonstrate plaintiff had no basis for suspecting fraudulent concealment of actual pregnancy rates until reports of alleged fraud became public. (See *Dujardin* v. *Ventura County Gen. Hosp.*, *supra*, 69 Cal.App.3d 350 at p. 358.) The record demonstrates facts sufficient to raise an inference of fraudulent concealment of other material facts which, if known to plaintiff, would have disclosed to her the nature and existence of her right of action. There was simply no basis known to plaintiff for considering herself other than one of the unlucky few who would wind up pregnant. This minimal risk she had willingly assumed. Her cause of action for fraud could not accrue until she became aware of facts from which she could conclude that defendant may have fraudulently misrepresented or concealed the *actual* risk of pregnancy with the Dalkon Shield.

Plaintiff contends that the mere fact of an occurrence of pregnancy while an intrauterine device is in place does not constitute reasonable notice of the existence of a cause of action so as to commence the running of the period of limitations. Insofar as such a cause of action is one for relief on the ground of fraud, we agree.

We believe plaintiff's fourth and fifth causes of action adequately state a cause of action for fraud resulting in the injuries pled in her complaint. Section 338, subdivision 4, provides a three-year statute of

limitations for an action for fraud, and states in pertinent part: "The cause of action in that case is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud . . . ." Since we have concluded plaintiff's cause of action for fraudulent concealment and misrepresentation states a cause of action for fraud, the rule in *Pashley* v. *Pacific Elec. Ry. Co., supra,* 25 Cal.2d 226 at page 235, and in section 338, subdivision 4, applies, permitting plaintiff to bring her cause of action within three years of April 1981, the date when she discovered facts concerning the possibility of fraud. She in fact brought the action within *one* year of that date. As plaintiff is entitled to the discovery rule, and her allegations of fraud are triable issues of fact, summary judgment is inappropriate.

### DISPOSITION

The order for summary judgment is vacated. The matter is remanded to the trial court, and the trial court is directed to allow trial to proceed consistent with the views expressed in this opinion.

Blease, J., and Sims, J., concurred.