Maher W. SOLIMAN, Plaintiff–Appellant,

v.

**PHILIP MORRIS INCORPORATED; Philip Morris Companies; R.J. Reynolds Tobacco Company; Council for Tobacco Research USA Inc.; Tobacco Institute, Inc.; Lorillard Tobacco Company; Brown & Williamson Tobacco Corp.; B.A.T. Industries P.L.C.; American Tobacco Company; Liggett Group Incorporated, Defendants–Appellees.**

No. 01–15387.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 16, 2002.*

Filed Nov. 22, 2002.

R.App. P. 34(a)(2).

Maher W. Soliman, San Francisco, CA, pro se.

Alicia J. Donahue and Patrick J. Gregory of Shook, Hardy & Bacon LLP, San Francisco, CA, for appellees Philip Morris, Inc., and Philip Morris Companies, Inc.

W. Bruce Wold and Shelley L. Brittman of Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for appellees Brown & Williamson Tobacco Corporation, individually and as successor by merger to the American Tobacco Company.

Mary C. Oppedahl of Crosby, Heafey, Roach & May P.C., Oakland, CA, for appellee Tobacco Institute, Inc.

Steven H. Bergman and Mary Elizabeth McGarry of Simpson Thatcher & Bartlett, Los Angeles, CA, and New York, NY, for appellee B.A.T. Industries p.l.c.

Thomas G. Scarvie and Richard Shively of Howard, Rice, Nemerovski, Canady, Falk & Rabkin P.C., San Francisco, CA, for appellee R.J. Reynolds Tobacco Company.

Sharon S. Mequet and Daniel J. Friedman of Loeb & Loeb LLP, Los Angeles, CA, for appellee Council for Tobacco Research—U.S.A., Inc.

Before HALL, KOZINSKI and McKEOWN, Circuit Judges.

## OPINION

KOZINSKI, Circuit Judge.

Christopher Columbus's log records the first European encounters with tobacco. His crew observed Indians "carrying a charred, hollow wood in their hands and herbs to smoke in this wood, which they are in a habit of doing."[1] Bartolemé de Las Casas, a contemporary who witnessed Columbus's return to Seville, described the consequences:

> These *muskets* as we will call them, they call *tabaco*. I knew Spaniards on this island of Española (San Domingo) who were accustomed to take it, and being reprimanded by telling them it was a vice, they made reply that they were unable to cease from using it.[2]

Five centuries later, the Surgeon General came to the same conclusion. In 1988, he formally classified nicotine as addictive, publishing a report whose title, *The Health Consequences of Smoking: Nicotine Addiction*, left little to the imagination.[3] FDA Commissioner David Kessler spent most of the 1990s trying to regulate tobacco products because of the threat that addiction posed to the public health. And, in the fall of 1994, Chandler was berated by Ross, Phoebe and the rest of the gang for his inability to quit.[4] In short, the addictive qualities of tobacco are a cultural fixture, and have been for quite some time.

Plaintiff Maher Soliman nevertheless claims he had no idea that cigarettes were addictive for the first thirty-two years that he smoked them. He says that he did not discover the truth until October 1999, when he saw a television interview of Jeffrey Wigand, the industry insider (so to speak) who made damaging revelations of nicotine manipulation by tobacco companies. Soliman sued the tobacco industry for making him an unwitting slave to the leaf, for demolishing his lungs and for causing him psychological distress. The district court dismissed because it found his claims were barred by the statute of limitations.

1. Soliman alleges that he has smoked cigarettes since the late 1960s, when he was fourteen. He is by now addicted to nicotine. He's tried to quit fifty times, but has never lasted more than three days.[5] At

---

1. *The Log of Christopher Columbus* 104 (Robert H. Fuson trans., 1987) (entry for Nov. 6, 1492).

2. Bartolemé de Las Casas, *Historia de las Indias* (1875) (manuscript compiled 1527–1561), *quoted as translated in* Charles Singer, *The Early History of Tobacco*, 219 Q. Rev. 125, 127 (1913).

3. Public Health Serv., U.S. Dep't of Health & Human Servs., *The Health Consequences of Smoking: Nicotine Addiction* (1988) [hereinafter Surgeon General's Report].

4. *See Friends: The One with the Thumb* (NBC television broadcast, Oct. 6, 1994).

5. Soliman's efforts at quitting apparently began only after he learned that tobacco was addictive from watching the Wigand inter-

the time he filed his complaint, he was only forty-six but had the lungs of an eighty-five year old. He suffers from a variety of respiratory disorders, including dyspnea and orthopnea, which impair his lung function and make it hard for him to breathe except in an upright position. He claims that smoking has afflicted him with "physical distress, depression, extreme anguish, nervousness, tension, anxiety and loss of sleep." Am. Compl. ¶ 25. And, still, he continues to smoke, unable to quit.

In October 1999, Soliman watched an MSNBC interview of Jeffrey Wigand, who revealed that the tobacco industry had suppressed information about the harmful effects of smoking. A few months later, he was diagnosed with the abovementioned respiratory disorders and began to research the industry in earnest. He claims that, in the course of this research, he made the discovery that's at the center of this lawsuit: Smoking is addictive. "Only then," claims Soliman, "did [he] discover that smoking was . . . an addiction and that he was and is addicted to tobacco product." Am. Compl. ¶ 26. He "could not have discovered, prior to the interview of Mr. Wigand on MSNBC, . . . the addictive nature of nicotine in cigarettes and the health hazards of tobacco, because the tobacco industry ha[d] actively and fraudulently concealed and suppressed" that information. *Id.* ¶ 27. Indeed, Soliman claims, "[t]he addictive nature of nicotine is a defect which is virtually impossible to identify and detect by the consumer." *Id.* ¶ 30.[6]

Soliman sued various tobacco companies in state court in March 2000, seeking $100 million in general and compensatory damages, a further $100 million in punitive damages and "equitable relief" in the form of a fund to pay his future medical bills. He invoked a number of theories, including product liability, negligence, breach of warranty, fraud, misrepresentation, conspiracy and intentional infliction of emotional distress. The thread running through his complaint is that cigarettes cause addiction and other health problems, and defendants must pay for inflicting these ailments upon him.

Defendants removed to federal court and, once there, moved to dismiss on the ground that the suit is untimely. Defendants are skeptical of Soliman's claim that, despite having smoked for thirty-two years, he didn't discover any of his health problems until a few months before he filed. They argue that Soliman had at least constructive knowledge much earlier.

The district court denied Soliman's motion to remand to state court and dismissed the complaint as barred by limitations. Soliman filed an amended complaint, but the district court held that the claims were still untimely and dismissed without leave to amend.

**2.** Soliman observes that the original removal notice was defective because it wasn't signed by all defendants. The district court, however, allowed defendants to cure this defect by amending the notice pursuant to 28 U.S.C. § 1653. "[A] procedural defect existing at the time of removal but cured prior to entry of judgment does not warrant reversal and remand of the matter to state court." *Parrino v.*

---

view in 1999. Why learning that tobacco was addictive suddenly made him want to quit, while years of warning labels disclosing the other serious health risks of smoking did not, is unclear. Nevertheless, on a motion to dismiss, we must assume the truth of these claims.

**6.** *Cf. Barber v. McDonald's Corp.,* No. 23145/2002 (N.Y. Sup.Ct. filed July 24, 2002), http://news.findlaw.com/hdocs/docs/mcdonalds/barbermcds72302cmp.pdf (killer fries).

*FHP, Inc.,* 146 F.3d 699, 703 (9th Cir. 1998).

Soliman also contends there is no complete diversity of citizenship as required by 28 U.S.C. § 1332. Soliman is a citizen of California. None of the named defendants is a citizen of that state, but the complaint lists several "Doe" defendants, whose "capacities and relationship to other Defendants ... are unknown" but who are, Soliman claims, "responsible for the acts complained of." Am. Compl. ¶ 14. In his appellate brief, Soliman for the first time identifies one of the mystery defendants—a company in Oakland, California, which he refers to as "DNA Plant Technology Corporation." Soliman claims that this firm genetically engineered a high-nicotine tobacco plant known as "Y–1" for Brown & Williamson, who grew it in Brazil and then secretly shipped it to the United States. He intends to substitute this newly identified co-conspirator for one of the Does.

■ The citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant. 28 U.S.C. §§ 1441(a), 1447(e) (superseding *Bryant v. Ford Motor Co.,* 832 F.2d 1080 (9th Cir.1987) (en banc)). Soliman failed to do so before the district court entered judgment against him, and his post-judgment attempt has no jurisdictional significance. *See Bryant v. Ford Motor Co.,* 886 F.2d 1526, 1531 (9th Cir. 1989).

■ 3. We therefore reach the central issue—whether Soliman's claims are timely. Because the district court dismissed the case on the pleadings, we can affirm only if untimeliness is apparent on the face of the liberally construed complaint. *See Pisciotta v. Teledyne Indus., Inc.,* 91 F.3d 1326, 1331 (9th Cir.1996).

■ Product liability claims are subject to a one-year statute of limitations in California. Cal.Civ.Proc.Code § 340(3). This provision bars untimely personal injury claims based on defective products regardless of the particular legal theory invoked. *See Nodine v. Shiley Inc.,* 240 F.3d 1149, 1153 n. 2 (9th Cir.2001); *Clark v. Baxter Healthcare Corp.,* 83 Cal.App.4th 1048, 1054 n. 2, 100 Cal.Rptr.2d 223 (2000). The statute of limitations normally begins to run when the claim accrues, that is, "when the cause of action is complete with all of its elements." *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999); 3 Witkin, California Procedure § 459 (4th ed.1996). When a plaintiff is unaware of his cause of action, the "discovery rule" may postpone accrual until he either discovers or has reason to discover it. *Norgart,* 21 Cal.4th at 397; 87 Cal.Rptr.2d 453, 981 P.2d 79, 3 Witkin, *California Procedure, supra,* § 463. A plaintiff "has reason to discover the cause of action when he has reason at least *to suspect* a factual basis for its elements." *Norgart,* 21 Cal.4th at 398, 87 Cal.Rptr.2d 453, 981 P.2d 79 (emphasis added).

■ Soliman argues that the statute of limitations didn't begin to run until he was aware, not only of his injuries, but also of defendants' specific wrongful conduct— in particular, their fraudulent concealment of the health hazards of smoking. But under California law, a plaintiff "need not be aware of the specific 'facts' necessary to establish the claim" in order for a cause of action to accrue. *Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1111, 245 Cal.Rptr. 658, 751 P.2d 923 (1988). Nor need he be aware of the particular legal theory that will support it. *Norgart,* 21 Cal.4th at 397, 87 Cal.Rptr.2d 453, 981 P.2d 79. His claim accrues "when, simply put, he at least 'suspects ... that someone has done something wrong' to him." *Id.* (quoting *Jolly,*

44 Cal.3d at 1110, 245 Cal.Rptr. 658, 751 P.2d 923). A smoker who is injured by a product he believed to be safe has reason at least to suspect that its manufacturer or seller has done something wrong. *See Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 39 (1st Cir.2000) ("[Plaintiff] knew her addiction was attributable to defendants. This alone put her on inquiry."); *Arnold v. R.J. Reynolds Tobacco Co.*, 956 F.Supp. 110, 117 (D.R.I.1997) ("[O]nce a plaintiff is aware that he ... has been injured by a product, [he] has enough information to commence a products liability action based on that injury."). The statute of limitations began to run when Soliman should first have suspected that defendants' tobacco products had injured him, whether or not he knew of defendants' wrongful conduct.[7]

■■■■ Soliman also argues that the statute of limitations didn't begin to run until he was diagnosed with dyspnea and orthopnea in January 2000. The relevant date, however, is not when Soliman knew about these particular injuries, but when he should have known of *any* significant injury from defendants' wrongful conduct:

"[W]here an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is

not postponed by the fact that the actual or substantial damages do not occur until a later date."

*Nodine*, 240 F.3d at 1153 (quoting *Spellis v. Lawn*, 200 Cal.App.3d 1075, 1080–81, 246 Cal.Rptr. 385 (1988)). "[I]f the statute of limitations bars an action based upon harm immediately caused by defendant's wrongdoing, a separate cause of action based on a subsequent harm arising from that wrongdoing" is normally barred. *Miller v. Lakeside Vill. Condo. Ass'n*, 1 Cal.App.4th 1611, 1622, 2 Cal.Rptr.2d 796 (1991); *see also* 3 Witkin, *California Procedure, supra*, § 545. "[A]lthough a right to recover nominal damages will not trigger the running of the period of limitation, the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period." *Davies v. Krasna*, 14 Cal.3d 502, 514, 121 Cal. Rptr. 705, 535 P.2d 1161 (1975). Soliman alleges that he suffered a number of significant injuries from the cigarettes he smoked. The injury he should have known about first is the one that starts the statute of limitations.[8]

■■■ Soliman alleged addiction as one of his distinct injuries. Am. Compl. ¶ 248. That might conceivably be a cognizable theory of recovery under California law. Tobacco addiction entails physical loss of control and—as any California restaurant-goer can attest—social ostracism. Some putative class actions have been premised entirely on the theory that addiction itself is an injury. *See, e.g., Castano v. Am.*

---

7. This is not a case like *Snow v. A.H. Robins Co.*, 165 Cal.App.3d 120, 211 Cal.Rptr. 271 (1985), where a plaintiff uses a product knowing that it has a predictable failure rate. In *Snow*, injury alone did not put the plaintiff on notice of wrongdoing because she knew that the product (an IUD) had a failure rate and reasonably inferred that she was one of the unlucky few. *See id.* at 134, 211 Cal.Rptr. 271. Soliman, by contrast, claims that the tobacco industry assured him cigarettes were

not addictive at all. He should have suspected wrongdoing as soon as he had actual or constructive knowledge of his addiction.

8. The date of diagnosis would be irrelevant anyway if the physical symptoms of the disease had manifested themselves at some earlier date. *See Miller*, 1 Cal.App.4th at 1624–25, 2 Cal.Rptr.2d 796.

*Tobacco Co.*, 84 F.3d 734, 747 n. 24 (5th Cir.1996) (noting "addiction as injury" as a "novel theor[y] of recovery"). We need not decide the matter here, however, because Soliman can't claim that his addiction is an appreciable injury and, at the same time, ask us to ignore it in determining when his claim accrued. If Soliman had actual or constructive knowledge of his addiction before he was diagnosed with respiratory illness, the date of actual or constructive knowledge of addiction would govern.

Soliman's complaint doesn't state when in his thirty-two year smoking history he became addicted to nicotine; he contends only that he first "discover[ed]" his addiction while researching the tobacco industry after his January 2000 diagnosis. Am. Compl. ¶ 26. However, the date that Soliman actually discovered his addiction is irrelevant if a reasonable person would have discovered it sooner. *See Norgart,* 21 Cal.4th at 398, 87 Cal.Rptr.2d 453, 981 P.2d 79. Soliman's constructive knowledge of his own addiction depends to some extent on whether he should have known that smoking is addictive. He alleges that he didn't discover, and couldn't have discovered, the addictive qualities of nicotine before he saw the television program featuring Jeffrey Wigand in October 1999. But the dangers of nicotine addiction have been in the public spotlight for many years. The Surgeon General concluded that nicotine is addictive in 1988, based on the "abundant scientific literature demonstrating that '[c]igarettes and other forms of tobacco are addicting.'" *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 154, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (quoting Surgeon General's Report, *supra,* at 14). He determined that the

" 'pharmacological and behavioral processes that determine tobacco addiction are similar to those that determine addiction to drugs such as heroin and cocaine.'" *Id.* (quoting Surgeon General's Report, *supra,* at 15). At congressional hearings in 1994, FDA Commissioner David Kessler testified at length about nicotine's addictive properties. *See Regulation of Tobacco Products (Part 1): Hearings Before the House Subcomm. on Health and the Environment of the Comm. on Energy and Commerce,* 103d Cong. 28–71 (1994). He noted that more than 15 million Americans try to quit each year and fail. *Id.* at 28. The FDA asserted jurisdiction over tobacco products in 1996 precisely because of their addictive effects. *See* Nicotine in Cigarettes and Smokeless Tobacco Is a Drug and These Products Are Nicotine Delivery Devices Under the Federal Food, Drug, and Cosmetic Act: Jurisdictional Determination, 61 Fed.Reg. 44,619 (Aug. 28, 1996); *see also Brown & Williamson,* 529 U.S. at 125–26, 120 S.Ct. 1291 (acknowledging that tobacco use is "one of the most troubling public health problems facing our Nation today," but holding that the FDA had exceeded its statutory authority). These are hardly obscure details in the historical record.

The California legislature acknowledged some time ago that the inherent risks of smoking are commonly known to the people of the state. In 1987, it enacted an immunity statute that shielded manufacturers and sellers of tobacco products from liability for the commonly known risks of smoking. *See* Act of Sept. 30, 1987, ch. 1498, § 3, 1987 Cal. Stat. 5777, 5778–79 (codified at Cal. Civ.Code § 1714.45), *repealed in relevant part by* Act of Sept. 29, 1997, ch. 570, 1997 Cal. Stat. 2838.[9] The

---

9. Soliman argues that the immunity statute tolled the statute of limitations while it was in effect. We're skeptical but, at any rate, the

California legislature repealed the immunity statute effective January 1, 1998, and Soliman didn't file his complaint until 2000. Any toll-

California Supreme Court interpreted this statute in *Naegele v. R.J. Reynolds Tobacco Co.*, 28 Cal.4th 856, 123 Cal.Rptr.2d 61, 50 P.3d 769 (2002). The plaintiffs in that case alleged that the tobacco industry had "lied about the addictive nature of smoking," "disseminate[d] deceptive ... statements about the ... addictive nature of cigarettes," and "control[led] the nicotine content of their cigarettes." *Id.* at 865–66, 123 Cal.Rptr.2d 61, 50 P.3d 769 (internal quotation marks omitted). The court held that the immunity statute barred these claims, reasoning that "[t]hese allegations do not suggest that the cigarettes plaintiff smoked exposed him to dangers other than those inherent in cigarette smoking" of which the public had a "general understanding." *Id.* at 866, 123 Cal.Rptr.2d 61, 50 P.3d 769 (internal quotation marks omitted). The premise of the immunity statute was that "certain products ... are 'inherently unsafe,' but ... the public wishes to have [them] available despite awareness of their dangers." *Id.* at 862, 123 Cal.Rptr.2d 61, 50 P.3d 769 (internal quotation marks omitted); *see also Barker v. Brown & Williamson Tobacco Corp.*, 88 Cal.App.4th 42, 51, 105 Cal.Rptr.2d 531 (2001) ("Regardless of any concealment by [tobacco companies], it has been a matter of common knowledge since at least 1965 that cigarette smoking is not healthy.").

Under California law, addiction is a commonly known risk of smoking and is therefore a danger of which a plaintiff is presumed to be aware.[10] Because the immunity statute was repealed in relevant part in 1997, nicotine addiction claims are no longer categorically barred. *See* Act of Sept. 29, 1997, ch. 570, 1997 Cal. Stat. 2838. But they are still subject to limitations. For precisely the same reason a plaintiff couldn't avoid the immunity statute by claiming ignorance of the risk of nicotine addiction, *Naegele*, 28 Cal.4th at 866, 123 Cal.Rptr.2d 61, 50 P.3d 769, he can't now avoid the statute of limitations based on the same claim.

A smoker may have a timely suit for addiction injury if he didn't become addicted until the year before filing suit. But that's not what Soliman claims; he says only that he didn't discover his addiction until recently.[11] The final question, therefore, is whether Soliman—presumed by California law to know that smoking causes addiction—had reason to suspect that he himself was addicted. *See Norgart*, 21 Cal.4th at 398, 87 Cal.Rptr.2d 453, 981 P.2d 79.

The question answers itself. It's a syllogism that if you are aware that a certain activity carries a risk, and you engage in that activity, you may suffer the

---

ing would have done nothing to help Soliman satisfy the one-year deadline. Cal.Civ.Proc. Code § 340(3).

10. *Naegele* held that certain other risks of smoking, such as those resulting from adulteration of tobacco products with ammonia or other additives, are not inherent in the tobacco product itself and thus are not subject to the immunity statute. 28 Cal.4th at 865, 123 Cal.Rptr.2d 61, 50 P.3d 769. Soliman alleges that tobacco companies added ammonia to cigarettes, making them more addictive. Am. Compl. ¶¶ 210–211, 224–225. These allegations have no effect on when Soliman's cause

of action accrued—the date he knew or should have known of his addiction. *See Norgart*, 21 Cal.4th at 397, 87 Cal.Rptr.2d 453, 981 P.2d 79; *Jolly*, 44 Cal.3d at 1111, 245 Cal.Rptr. 658, 751 P.2d 923.

11. A plaintiff who doesn't allege that he was injured within the limitations period and instead invokes the discovery rule "concede[s] by implication that, without [the discovery rule], [his] claims are barred." *McKelvey v. Boeing N. Am., Inc.*, 74 Cal.App.4th 151, 160, 86 Cal.Rptr.2d 645 (1999). Unless Soliman is entitled to the discovery rule for his addiction injury, his complaint is untimely.

consequences of that risk. Replacing "are aware" with "should be aware" doesn't change the logic of this inference. Soliman knew he was a smoker. Under California law, he was presumed to know that smoking can cause addiction. Even if we assume that Soliman had no direct evidence of his addiction, he is charged with the obvious inferences he should have drawn about the consequences of his conduct. *See id.* (a cause of action accrues when the plaintiff "has reason to discover" it). He may not have had a reason to know *for sure* that he was addicted until he tried to quit. But he at least should have *suspected* he had succumbed to that risk at some point during the thirty-two years that he smoked. A longtime smoker who alleges addiction as an injury may not invoke the discovery rule based solely on the industry's alleged concealment; nicotine's addictiveness is a matter of public record, and addiction is a predictable consequence of using an addictive product.[12] Because Soliman is charged with this knowledge, the district court properly dismissed his complaint as barred by the statute of limitations.[13]

4. Soliman argues that, whether or not his other claims are untimely, his fraud claim is viable because defendants' fraudulent concealment is a "continuing wrong" that does not finally accrue until defendants disclose the things they are conceal-

ing. *See Page v. United States,* 729 F.2d 818, 821–22 (D.C.Cir.1984); *Amador Valley Investors v. City of Livermore,* 43 Cal. App.3d 483, 490, 117 Cal.Rptr. 749 (1974). Soliman claims that defendants "still refuse to admit, and *continue* to conceal, the fact that smoking ... causes disease and that nicotine ... is addictive." Am. Compl. ¶ 53. That Soliman can make these allegations suggests that the industry's alleged deception is not terribly effective. In any event, even assuming that fraud may be a continuing tort in some circumstances, Soliman has failed to plead it here.

A necessary element of a fraud claim is justifiable reliance on the defendant's misrepresentation or omission. *Lazar v. Superior Court,* 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996); 5 Witkin, *Summary of California Law* § 676 (9th ed.1988). As we have already determined, California law presumes a plaintiff's awareness that smoking causes addiction and other health problems. *See* pp. 973–74 *supra.* Purported reliance on the industry's failure to disclose those facts is therefore not justifiable. Fraud that "should be apparent even to the plaintiff[ ]" is not actionable. 5 Witkin, *Summary of California Law, supra,* § 717; *see also Seeger v. Odell,* 18 Cal.2d 409, 415, 115 P.2d 977 (1941) ("If the conduct of the plaintiff in the light of his own intelligence

---

**12.** Because Soliman had constructive knowledge of his addiction more than a year before he filed suit, we need not address defendants' contention that his pleadings are not particular enough to invoke the discovery rule. *See Denholm v. Houghton Mifflin Co.,* 912 F.2d 357, 362 (9th Cir.1990) ("Formal averments or general conclusions to the effect that the facts were not discovered until a stated date, and that the plaintiff could not reasonably have made an earlier discovery, are useless." (internal quotation marks omitted)).

**13.** Soliman argues that his claim for equitable relief is governed by laches rather than by the

statute of limitations. *See Conti v. Bd. of Civil Serv. Comm'rs,* 1 Cal.3d 351, 359, 82 Cal. Rptr. 337, 461 P.2d 617 (1969). But the relief that he seeks—payment of his medical bills—is legal, not equitable, so the doctrine of laches does not apply. *See Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 714, 151 L.Ed.2d 635 (2002) (" '[A] judgment imposing a merely personal liability upon the defendant to pay a sum of money' " is legal rather than equitable in nature. (quoting *Restatement of Restitution* § 160 cmt. a, at 641–42 (1936))).

and information was manifestly unreasonable, ... he will be denied a recovery."). This rule applies where, as here, "the law ... assumes one will have ... knowledge" of the true facts. *See Kahn v. Lischner,* 128 Cal.App.2d 480, 487, 275 P.2d 539 (1954). Soliman was presumed to know the things he alleges were concealed from him. His complaint therefore cannot state a continuing fraud claim. *See Pearson v. Norton,* 230 Cal.App.2d 1, 7–8, 40 Cal. Rptr. 634 (1964) (absence of one element of a fraud claim is fatal).

\* \* \*

In light of Soliman's previous failed attempt to amend his complaint, the district court did not abuse its discretion in denying further leave to amend. *See Ascon Props., Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1160 (9th Cir.1989). Soliman's suit was properly removed and then properly dismissed.

**AFFIRMED.**