Nikki **POOSHS**, Plaintiff,

v.

**ALTRIA GROUP, INC.,**
**et al., Defendants.**

No. C 04–1221 PJH.

United States District Court,
N.D. California.

Aug. 20, 2004.

olds Tobacco Company ("R.J.Reynolds"); Brown and Williamson Tobacco Corporation ("Brown & Williamson"); and Hill & Knowlton to dismiss the complaint for failure to state a claim came on for hearing before this court on July 21, 2004. Plaintiff Nikki Pooshs appeared by her counsel Christopher Andres and James Nevin, Jr. Defendants Philip Morris and Lorillard appeared by their counsel M. Kevin Underhill and James Lee Dumas; defendant R.J. Reynolds appeared by its counsel Paul Crist; and defendant Brown & Williamson appeared by its counsel Gail L. Gough. Defendant Hill & Knowlton filed a written notice of joinder in the motion, but did not appear at the hearing. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion.

## INTRODUCTION

This is a tobacco products liability suit. Plaintiff Nikki Pooshs began smoking cigarettes in 1953, and continued smoking until 1991. She was diagnosed with lung cancer in January 2003. She claims that when she began smoking, she was unaware of the true facts concerning the unsafe nature of cigarettes, including the health effects of smoking. She also asserts that defendants concealed the addictive nature of smoking cigarettes and the associated health hazards. She claims that as a result of defendants' conduct, she was unable to quit smoking for almost 40 years, despite numerous attempts to do so.

In January 2004, plaintiff filed suit in the California Superior Court, County of San Francisco, against companies that manufacture and/or sell tobacco products, or are in the business of advertising tobacco products or publicizing the business of

David R. Donadio, David Lee Fiol, James Patrick Nevin, Jr., Brayton & Purcell, Novato, CA, for Plaintiff.

James Lee Dumas, Michael Kevin Underhill, Shook Hardy & Bacon LLP, Peter N. Larson, Paul Grant Crist, Katherine A. Alberts, Jones Day, Gayle L. Gough, Sedgwick, Detert, Moran & Arnold, Stan G. Roman, Krieg Keller Sloan Reilley & Roman LLP, J. Leah Castella, Raymond C. Marshall, McCutchen Doyle Brown Enersen LLP, San Francisco, CA, for Defendants.

## AMENDED ORDER GRANTING MOTION TO DISMISS [1]

HAMILTON, District Judge.

The motion of defendants Philip Morris USA, Inc. ("Philip Morris"); Lorillard Tobacco Company ("Lorillard"); R.J. Reyn-

---

1. This order amends the order filed August 11, 2004, to remove the designation "Not for Citation," and to clarify the status of the unserved defendants.

companies that manufacture or sell tobacco products. Plaintiff alleged 13 causes of action, including claims of negligence, fraud and misrepresentation, failure to warn, and unfair business practices and deceptive advertising, against 22 named defendants. The action was removed on March 26, 2004, on the basis of diversity jurisdiction. As of the date of removal, fewer than half of the defendants had been served.[2]

After removal, defendants Phillip Morris, Lorillard, R.J. Reynolds, and Brown & Williamson (the "manufacturer defendants"); Hill & Knowlton; Safeway, Inc. ("Safeway"); DNA Plant Technology, Inc. ("DNA"); Altria Group, Inc. ("Altria"); Loews Corporation ("Loews"); and Kraft Foods Global, Inc. ("Kraft") filed motions to dismiss. Plaintiff filed a motion to remand. The court stayed briefing on the motions to dismiss pending the ruling on the motion to remand.

On June 8, 2004, the court denied plaintiff's motion to remand, finding that Safeway and DNA—the only two California defendants—were sham defendants. On June 16, 2004, plaintiff stipulated to the dismissal of Altria, Loews, and Kraft, and on June 17, 2004, Altria, Loews, and Kraft withdrew their motions to dismiss. On July 7, 2004, pursuant to the stipulations, the court dismissed Altria, Loews, and Kraft. On July 16, 2004, the court granted the motions to dismiss of Safeway and DNA, to which plaintiff had filed no substantive opposition. Since the state-law unfair competition and misleading advertising claims were asserted only against Safeway, those causes of action (eleventh

through thirteenth) are no longer in the case.

Now pending is the motion to dismiss filed by the four manufacturer defendants, joined by Hill & Knowlton. Plaintiff alleges 10 causes of action against the manufacturer defendants, and 7 of those 10 also against Hill & Knowlton ("H & K").[3] The claims asserted against these defendants are 1) negligence, against the manufacturers and H & K; 2) products liability, against the manufacturers only; 3) misrepresentation, against the manufacturers and H & K; 4) fraud and deceit (intentional misrepresentation), against the manufacturers and H & K; 5) fraud and deceit (concealment), against the manufacturers and H & K; 6) fraud and deceit (false promise), against the manufacturers and H & K; 7) fraud and deceit (negligent misrepresentation), against the manufacturers and H & K; 8) concert of action (conspiracy), against the manufacturers and H & K; 9) pre–1969 failure to warn, against the manufacturers only; and 10) off-label failure to warn, against the manufacturers only.

## DISCUSSION

### A. Legal Standard

A court should dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim only where it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Pillsbury,*

---

**2.** The court previously found that defendants Tobacco Institute, Inc., and Council for Tobacco Research U.S.A. had not been properly served. At the hearing on the present motions to dismiss, plaintiff's counsel stated that those two defendants would be "re-served," and that any other defendant that had not been served as of the date of the hearing

would not be served. On August 19, 2004, in response to an order to show cause, plaintiffs requested that judgment be entered as to all defendants.

**3.** H & K is alleged to be the public relations agent for the manufacturer defendants.

*Madison & Sutro v. Lerner,* 31 F.3d 924, 928 (9th Cir.1994). Review is limited to the contents of the complaint. *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir.1995). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir.1996).

Motions to dismiss for failure to state a claim are disfavored, *see Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997), and 12(b)(6) dismissals are proper only in "extraordinary" cases. *See United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). In dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995) (citations omitted).

### B. Defendants' Motion to Dismiss

Defendants argue that under the Ninth Circuit's decision in *Soliman v. Philip Morris, Inc.,* 311 F.3d 966 (9th Cir.2002), *cert. denied,* —— U.S. ——, 124 S.Ct. 64, 157 L.Ed.2d 28 (2003), plaintiffs' claims are barred by the applicable statutes of limitations. As further grounds for dismissal, defendants contend that the third through eighth causes of action (misrepresentation, fraud) should be dismissed for failure to plead with sufficient particularity; that the third through eighth causes of action and the tenth cause of action (off-label failure to warn) should be dismissed in part because they allege post–1969 claims that are barred by the Federal Cigarette Labeling and Advertising Act and because the risks of smoking have long been common knowledge as a matter of law; and that the first cause of action (negligence) and second cause of action (products liability) should be dismissed in whole or in part because of the preemptive effect (express and conflict preemption) of federal law.

■] Defendants contend that based on the Ninth Circuit's reasoning in *Soliman,* all plaintiff's claims must be dismissed as time-barred. In California, product liability claims are subject to a two-year statute of limitations. Cal. Civ. P.Code § 335.1 (an "action for … injury to … an individual caused by the wrongful act or neglect of another" must be commenced within the two-year period). Fraud claims are governed by a three-year statute of limitations. Cal. Civ. P.Code § 338(d) (an "action for relief on the ground of fraud or mistake" must be commenced within three years). A limitations period begins to run when the claim accrues, or "when the cause of action is complete with all its elements." *Soliman,* 311 F.3d at 971 (citing *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999)).

■ The "discovery rule" can postpone accrual of a cause of action until the plaintiff either discovers the injury or has reason to discover it. *Id.* But, under California law, a plaintiff has "reason to discover" a cause of action whenever he or she "has reason at least to suspect a factual basis for its elements." *Id.*

A plaintiff need not be aware of the specific "facts" necessary to establish the claim [such as failure to test, failure to warn, failure to diagnose]; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

*Rose v. Fife,* 207 Cal.App.3d 760, 769, 255 Cal.Rptr. 440 (1989) (citing *Jolly v. Eli*

*Lilly & Co.,* 44 Cal.3d 1103, 1110–1111, 245 Cal.Rptr. 658, 751 P.2d 923 (1988)).

In *Soliman,* the court found that the plaintiff, like all smokers injured by a product (cigarettes) they believed to be safe, had had ample reasons to suspect for many years that cigarette manufacturers or sellers had done something wrong. *Soliman,* 311 F.3d at 972. The plaintiff in *Soliman* alleged that he began smoking cigarettes in the 1960s, when he was a minor, and smoked them for thirty-two years. He claimed that in late 1999, he discovered for the first time that smoking was addictive, and that shortly thereafter, he was diagnosed with respiratory disorders. He sued the tobacco companies in March of 2000, asserting claims for product liability, negligence, breach of warranty, fraud, misrepresentation, conspiracy, and emotional distress. "The thread running through his complaint" was the claim that "cigarettes cause addiction and other health problems, and defendants must pay for inflicting these ailments upon him." *Id.* at 970. Defendants moved for dismissal, asserting that plaintiff's claims were time-barred. The district court granted the motion, and the Ninth Circuit affirmed.

The Ninth Circuit found that the inherent risks of smoking are commonly known in California, and that, in particular, "the dangers of nicotine addiction have been in the public spotlight for many years." *Id.* at 973. The court found further that despite the plaintiff's claim that he had personally only recently learned about this danger, he could be charged with constructive knowledge of that risk long before, as "[n]icotine's addictiveness is a matter of public record, and addiction is a predictable consequence of using an addictive product." *Id.* at 975 (citation omitted). The court found that, even with regard to the injuries with which plaintiff had been diagnosed only a few months before he filed suit, the relevant date was *not* when he knew about those particular injuries,

"but when he should have known of *any* significant injury from defendants' wrongful conduct." *Id.* at 972.

The court concluded that "if the statute of limitations bars an action based on harm immediately caused by defendant's wrongdoing, a separate cause of action based on a subsequent harm arising from that wrongdoing" is also barred. *Id.* Because the plaintiff claimed that defendants had injured him by addicting him to smoking and by causing other health problems, the date of his actual or constructive knowledge of addiction determined when his other causes of action accrued, even if his knowledge long predated specific knowledge of his respiratory illness. *Id.* at 972–73. "The injury he should have known about first is the one that starts the statute of limitations." *Id.* at 972.

Similarly, in the present case, plaintiff alleges she began smoking as a minor and then continued to smoke for over thirty years because she was "unable to quit." Complaint ("Cplt") ¶¶ 21–22, 76. However, she did finally manage to quit in 1991. Defendants argue that, based on *Soliman,* the court should find that the risks of nicotine addiction have long been commonly known, and that plaintiff actually or constructively knew of her alleged addiction long ago—at the very least by 1991, more than twelve years before she filed this lawsuit. They assert that under *Soliman,* plaintiff is presumed to have long known of addiction risks, and that all causes of action for subsequent smoking-related injuries are therefore barred by the statute of limitations.

Plaintiff responds that her complaint is sufficiently pled under California law. She contends that lung cancer is a disease separate and distinct from nicotine addiction, and argues that under the "discovery rule," the statute of limitations did not begin to run until her lung cancer diagno-

sis in January 2003. She does not argue that she does *not* claim addiction as an injury. Rather, she asserts that under the "two-injury rule," the time to commence litigation does not begin to run on a separate and distinct disease until that disease has become manifest (citing *Wagner v. Apex Marine Ship Mgmt. Corp.*, 83 Cal. App.4th 1444, 1452–54, 100 Cal.Rptr.2d 533 (2000)).[4] She contends that under California law, "where two separate and distinct ... disease processes resulting from a single period of exposure [to a harmful substance] manifest themselves at different times, each is entitled to a different date of injury" (citing *Chevron U.S.A. Inc. v. Workers' Comp. Appeals Bd.*, 219 Cal. App.3d 1265, 1267, 268 Cal.Rptr. 699 (1990)).

Plaintiff asserts moreover that she could not have sued for damages for her lung cancer in an earlier action based upon addiction because such damages would have been speculative. She maintains that the plaintiff in *Soliman* alleged addiction as an injury, and argues that the Ninth Circuit's ruling should be limited to the particular facts of the case. She contends that she alleges lung cancer, not addiction, as her injury, and that *Soliman* therefore does not operate to bar her claims. She also asserts that her claims are not barred by the "common knowledge" discussed in *Soliman.*

Defendants, on the other hand, argue that as held in *Soliman*, California's "first injury" rule applies:

> The relevant date is not when Soliman knew about these particular injuries [referring to the plaintiff's respiratory injuries] ... but when he should have known of any significant injury from defendant's wrongful conduct.... "If

the statute of limitations bars an action based upon harm immediately caused by the defendant's wrongdoing, a separate cause of action based upon a subsequent harm from that wrongdoing" is normally barred. *Miller v. Lakeside Vill. Condo. Ass'n*, 1 Cal.App.4th 1611, 1622, 2 Cal. Rptr.2d 796 (1991).... Soliman alleges that he suffered a number of significant injuries from the cigarettes he smoked. The injury he should have known about first [addiction] is the one that starts the statute of limitations.

*Soliman*, 311 F.3d at 972; *see also id.* (citing *Spellis v. Lawn*, 200 Cal.App.3d 1075, 1080–81, 246 Cal.Rptr. 385 (1988)) ("[T]he infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period.'")

Thus, plaintiff relies on the line of California cases that allow people who become ill because of occupational exposure to asbestos to sue for each new disease they develop, while defendants rely on the line of cases cited in *Soliman* which hold that if the statute of limitations bars an action based upon harm immediately caused by defendant's wrongdoing, a separate cause of action based on a subsequent harm arising from the wrongdoing is normally barred.

To the extent that there is any conflict between the California Court of Appeal and the Ninth Circuit, this court must follow *Soliman* where it is applicable. *See Kona Enterprises. Inc. v. Estate of Bishop*, 229 F.3d 877, 884 n. 7 (9th Cir.2000). In *Soliman*, the plaintiff alleged addiction as a specific injury. The Ninth Circuit barred application of the two-injury rule, finding that the plaintiff had constructive knowledge of the hazards of smoking—

---

4. As defendants point out, however, the plaintiff in *Wagner v. Apex Marine* sought damages for asbestos-related injuries under federal maritime law, not under California law, and

the case drew exclusively from jurisdictions other than California when analyzing the statute of limitations.

both the hazard of becoming addicted to nicotine and the hazard of developing health problems associated with smoking tobacco—from the date he should reasonably have known he was addicted to nicotine.

Nevertheless, plaintiff contends that Soliman is not controlling because lung cancer is a disease distinct and separate from nicotine addiction, and asserts that she does not seek relief for her addiction as damages. A number of district court cases that have relied on *Soliman* have considered whether the plaintiffs in those particular cases alleged addiction as a specific injury.[5] In all cases except one (*Rodarte*), the courts found either that the plaintiff had alleged addiction as an injury, or that, as in *Soliman*, the "thread running through [plaintiff's] complaint is that cigarettes cause addiction and other health problems, and defendants must pay for inflicting these ailments upon [plaintiff]." *Soliman*, 311 F.3d at 970, *cited in, e.g., Simpson v. Philip Morris Inc.*, 2003 WL 23341207 at *3.

■ In the present case, the court has compared the allegations in the first amended complaint ("FAC") in *Soliman v. Philip Morris, Inc.*, C–00–1530 MJJ (N.D. Cal.2000), with the allegations in the complaint at issue here. In both complaints, the plaintiffs claim that smoking cigarettes caused them to develop various physical illnesses. In *Soliman*, the illness affected the plaintiff's respiratory system. In the present complaint, the illness is lung cancer. In both cases, the plaintiffs also allege that nicotine is addictive, that the defendants concealed from plaintiffs and the public that nicotine is addictive, and

that they (the plaintiffs in each case) became addicted to nicotine from an early age. The court finds that, while the plaintiff in the present case may not claim addiction as an injury in quite so specific a way as did the plaintiff in *Soliman*, the allegation that the plaintiff here became addicted to nicotine and was injured by that addiction runs as a thread throughout the complaint.

In the introductory section of the *Soliman* FAC, the plaintiff asserted

● that he "began smoking when he was fourteen years of age in reliance on defendants' representation that smoking is a habit and not an addiction" and their representation that there are no proven harmful effects to smoking cigarettes, FAC ¶ 20;

● that on October 15, 1999, plaintiff "began a daily effort to kick the habit of smoking but he was unsuccessful" and that he tried to stop smoking "in excess of 50 times to no avail," FAC ¶ 23;

● that in January 2000, he was "diagnosed with smoking-related illness," including " 'dyspnea,' which is an impairment to lung function, 'orthopnea,' or inability to breath [sic] except in an upright position, among other diagnosis, including but not limited to, premature lung aging estimated to be eighty-five years, physical distress, depression, extreme anguish, nervousness, tension, anxiety and loss of sleep," FAC ¶ 25;

● that he could not have discovered "the addictive nature of nicotine in cigarettes and the health hazards of tobacco" prior to October 15, 2000, because the tobacco industry "actively and fraudulently con-

---

**5.** *See Norris v. R.J. Reynolds Tobacco*, 2004 WL 601653 (C.D.Cal. Feb. 13, 2004); *Simpson v. Philip Morris, Inc.*, 2003 WL 23341207 (C.D.Cal., Nov. 6, 2003); *Taylor v. Philip Morris, Inc.*, 2003 WL 22416693 (N.D.Cal., Oct. 20, 2003); *Lee v. Philip Morris,* *Inc.*, 2003 WL 23341206 (N.D.Cal., Aug. 4, 2003); *Rodarte v. Philip Morris, Inc.*, 2003 WL 23341208 (C.D.Cal., June 23, 2003); *Grisham v. Philip Morris, Inc.*, 2003 WL 23340889 (C.D.Cal., Apr. 1, 2003).

cealed and suppressed the addictive nature of their product (cigarettes) and its causes and potential safety consequences," FAC ¶ 27;

• that defendants "manipulated the level of nicotine in tobacco products so as to make these products addictive" and "concealed the results of testing and research ... establishing the addictive nature of nicotine and health hazards of tobacco," FAC ¶ 28;

• that "[t]he addictive nature of nicotine is a defect which is virtually impossible to identify and detect by the consumer," FAC ¶ 30;

• that the tobacco industry concealed the addictive nature of nicotine, FAC ¶¶ 31–35, 45, and denied that nicotine is addictive, FAC ¶¶ 38–40; and

• that plaintiff discovered in October 1999 "that he did not possess the ability to stop smoking because he is addicted to nicotine," FAC ¶ 47.

Plaintiff asserted further, in the concluding allegations of six of his causes of action, that "[a]s a direct and proximate result of [consuming tobacco products, defendants' negligence, defendants' misrepresentation, fraud and concealment of material facts, and defendants' conspiracy to commit fraud and misrepresentation]," he "suffered and continues to suffer addiction to the chemical substance nicotine contained in tobacco product, impairment to lung function known as 'dyspnea,' inability to breath [sic] except in an upright position known as 'orthopnea,' damage to his lungs, premature aging to his lungs, difficulty breathing laying [sic] down, chest pain, physical distress, depression, extreme anguish, nervousness, tension, anxiety, and loss of sleep." FAC ¶¶ 61, 68, 94, 248, 267, 284. He also alleged that defendants' breach of express warranties caused him "to become an addict to the chemical substance of nicotine and impairment to lung function among other injuries," and

that he was "currently addicted to the toxic chemical substance of nicotine in cigarettes." FAC ¶¶ 74, 288.

In the complaint at issue in the present action, plaintiff alleges in the introductory section ("The Parties") that "[a]s a direct and proximate result of inhaling cigarette smoke," she "developed and will likely die from terminal lung cancer." Cplt. ¶ 23. She does not specifically allege in that section that she suffered from addiction to nicotine. However, throughout the allegations supporting the individual causes of action, each of which also incorporates by reference all previously stated allegations, plaintiff asserts repeatedly both that smoking cigarettes is hazardous to health and that nicotine is addictive. Each cause of action concludes with the allegation, "As a direct and proximate result of [the aforesaid defects, actions, conduct, misrepresentations, or concert of action], plaintiff has sustained injury, damage, loss, and harm as more specifically set forth herein." Cplt. ¶¶ 30, 34, 39, 47, 52, 59, 65, 77, 81, 85.

Throughout the complaint, plaintiff describes that harm caused by the defendants as creating and selling a product that caused addiction and that was harmful to health. She claims

• that defendants publicly represented that cigarettes and other tobacco products were safe for the use for which they were intended, and induced plaintiff to justifiably rely on advertisements and other representations designed to conceal the true "health hazards" and "addictive nature of cigarettes," Cplt ¶¶ 36 and 41;

• that such representations were untrue because cigarettes and tobacco products were addictive and caused various illnesses, Cplt. ¶ 38;

• that defendants carried out a scheme or program to deceive plaintiff and the public "as to the health hazards of smoking

and the addictive nature of smoking," and as to defendants' "actual role in manipulating, enhancing, engineering, facilitating and/or otherwise controlling the addictive properties of cigarettes," Cplt ¶ 49;

• that defendants' fraudulent acts resulted in plaintiff being unaware that smoking caused health hazards, that defendants had manipulated and controlled the delivery of nicotine, which would cause her to develop lung cancer, Cplt ¶ 51;

• that defendants engaged in a conspiracy to impede the flow of information from the medical and scientific community to the general public "on the health risks and addictive nature of cigarettes and smoking;" engaged in a conspiracy to conceal from the public that cigarettes had "addictive properties" and that defendants manipulated and controlled the delivery of nicotine levels; and engaged in a conspiracy to induce minors to smoke "so as to hook another generation of smokers who, by the age of majority, were addicted to or dependant upon cigarettes," Cplt. ¶¶ 67;

• that defendants conspired to suppress evidence of the health hazards of smoking by continuing to manipulate and otherwise "control the nicotine level of cigarettes to keep smokers addicted and to lure and hook younger smokers," Cplt. ¶ 72;

• that in furtherance of this alleged conspiracy, defendants manipulated and otherwise "controlled the nicotine content of their cigarettes," concealed their knowledge of "the addictive nature of nicotine," and "denied publicly that nicotine was addictive and that they attempted to and/or did achieve levels of nicotine in their products to create or sustain addiction," Cplt. ¶ 73;

• that defendants concealed or destroyed information in their possession concerning "the unsafe nature of cigarettes, the hazards of smoking to health, the addictive nature of nicotine," and their manipulation and control of nicotine deliv-ery, and the targeting of minors in advertising, Cplt ¶ 74;

• that because of defendants' actions, plaintiff was "unaware of the unsafe nature of cigarettes, the extent to which smoking was a hazard to plaintiff's health," that defendants had manipulated or otherwise controlled nicotine levels in cigarettes, that they "targeted youth in advertising so as to hook before majority and then assert adult free choice as a defense once so hooked," and that as a result, plaintiff "began smoking cigarettes as a minor, continued to smoke … despite numerous attempts to quit, was unable to quit until 1991, and developed lung cancer," Cplt. ¶ 76;

• that prior to 1969, defendants had a duty to warn foreseeable users that their use of cigarettes "was likely to lead to addiction, habituation, and/or dependance," and that "termination or limitation of use [of] cigarettes would be extremely difficult if consumption was initiated, particularly at an early age," Cplt. ¶ 79; and

• that defendants had a duty, "off-label," to disclose to cigarette smokers, including plaintiff, "the ingredients of cigarettes and the presence of additives and alterations to the nicotine levels of the tobacco contained therein," Cplt. ¶ 83.

Because this court is bound by the rule of law stated in *Soliman,* the motion to dismiss the complaint as time-barred must be granted.

## CONCLUSION

In accordance with the foregoing, the court hereby GRANTS the motions to dismiss. Having found that plaintiff's claims are time-barred, the court does not consider the remaining grounds upon which defendants seek dismissal. Because the court finds that the deficiencies in the pleading cannot possibly be cured by the

allegation of other facts, the dismissal of the claims against Philip Morris, Lorillard, R.J. Reynolds, Brown & Williamson, and Hill & Knowlton is WITH PREJUDICE.

**IT IS SO ORDERED.**