**ESTATE OF Pedro ALICANO AYALA, et al., Plaintiffs,**

v.

**PHILLIP MORRIS, INC, et al., Defendants.**

**No. Civ. 02–2175 (PG).**

United States District Court, D. Puerto Rico.

May 15, 2003.

Francisco Padilla–Rodriguez, San Juan, PR, for Estate of Pedro Alicano–Ayala, Hector Rodriguez–Rivera, Irma E. Alicano–Gonzalez, Conjugal Partnership Rodriguez–Alicano, Javier I. Ramirez–Alicano, Luis A. Ramirez–Alicano, plaintiffs.

Francisco A. Besosa, Adsuar, Muniz, Goyco & Besosa, San Juan, PR, for Lorillard Tobacco Co., defendant.

Salvador Antonetti–Zequeira, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for R.J. Reynolds Tobacco Company, defendant.

William A. Graffam, Jimenez, Graffam & Lausell, San Juan, PR, for Brown & Williamson Tobacco Co., British American Tobacco, defendants.

Pedro J. Santa–Sanchez, O'Neill & Borges, San Juan, Mary Elizabeth McGarry, New York, NY, for British American Tobacco, P.L.C., defendant.

### OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Before the Court is Defendants R.J. Reynolds Tobacco Company, Lorillard Tobacco Company, and Brown & Williamson Tobacco Corporation's (hereinafter "Defendants R.J. Reynolds et al.") "Motion to Dismiss Plaintiffs' First Amended Complaint," (Defs.' Mot. Dismiss, Docket No. 27), and Plaintiffs' "Reply to Certain Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint," (Pls.' Opp'n Mot. Dismiss, Docket No. 31). For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**.

### BACKGROUND

Plaintiffs Hector Rodríguez Rivera, Irma Alicano González, Javier I. Ramírez Alicano, and Luis A. Ramírez Alicano, invoked this Court's jurisdiction under 28 U.S.C. § 1332 and filed suit against the Defendants under Article 1802 of the Puerto Rico Civil Code. (Am. Compl., Docket No. 23).[1] Plaintiffs claim that Defendants entered into a conspiracy to defraud the public and conceal information regarding the hazards of smoking tobacco products; that this conspiracy led Mr. Pedro Alicano Ayala to a life of heavy smoking that prevented him from "making a conscious decision whether or not to smoke," (Am.Compl.¶ 47); and that Mr. Alicano died from lung cancer and other respiratory illnesses caused by his many years of smoking, (Am.Compl.¶¶ 46–47).

Plaintiffs contend that starting in 1953 the Defendants engaged in a conspiracy to deny and misrepresent the hazards of smoking. In furtherance of this conspiracy, Defendants allegedly created the "Tobacco Industry Research Committee" and "made false and misleading statements to the public through press releases, advertising, and public statements ... that were intended to be heard by the consuming public." (Am.Compl.¶¶ 26–28). One of these releases was the famous "Frank Statement to Cigarette Smokers," published in the 1950's, that questioned the reports suggesting that smoking was hazardous. (Am. Compl ¶ 28). The goal was to conceal information that confirmed the hazards of cigarette smoking and question "the research and conclusive evidence published by numerous sources and authorities in the field" suggesting a link between smoking and respiratory illnesses. (Am. Compl.¶¶ 29–34).

Mr. Alicano was allegedly a victim of this conspiracy to conceal and defraud. The Amended Complaint is not clear as to when Mr. Alicano started smoking: at one point it states that he had been a smoker "since a young age," but it also alleges that Mr. Alicano smoked for "a period longer than 20 years" and that he had been smoking three packs of cigarettes a day "for about ten to fifteen years" before 1989. Mr. Alicano exhibited symptoms of respiratory problems in 1989, as he suffered from frequent attacks of bronchitis and "a persistent cough." (Am.Compl.¶ 43). By 1991, with his condition worsening, Mr.

---

1. The Plaintiffs are the son-in-law, daughter, and grandsons, respectively, of Mr. Pedro Alicano. Plaintiffs' Amended Complaint does not specify whether they are bringing suit in their representative capacities or in their personal capacities. Clarifying this doubt would not alter the Court's analysis or conclusion, however.

Alicano was living under his daughter's care and received treatment in the Veterans Administration Hospital in San Juan. (Am.Compl.¶ 44). According to the Amended Complaint, Mr. Alicano required "a special bed," "chocked frequently," and "could not move outside a close radius within the house because he would dangerously suffer shortness of breath." (Am. Compl.¶ 44). In 1993 Mr. Alicano was diagnosed with lung cancer, and he died on April 3, 1994. Plaintiffs claim that Mr. Alicano's death "was due to a condition or illness directly related to or caused by cigarette smoking." (Am.Compl.¶ 46).

Defendants R.J. Reynolds et al. advance two grounds for dismissal. First, they argue that the claims are time-barred. (Defs.' Mot. Dismiss, at 4–15). The Plaintiffs filed suit eight years after Mr. Alicano's death, yet they "give no real explanation as to why they did not know of the Decedent's cancer diagnosis and its alleged link to smoking at the time of the Decedent's diagnosis or his death." (Defs.' Mot. Dismiss, at 3). According to Defendants R.J. Reynolds et al., there was sufficient public information to suggest that Plaintiffs "must have known well before November 2001 the potential causes of the Decedent's illness and death." (Defs.' Mot. Dismiss, at 3). "If Plaintiffs did not know, it was due solely to their lack of diligence." (Defs.' Mot Dismiss, at 3). Defendants R.J. Reynolds et al. also claim that dismissal is proper for failure to comply with Federal Rule of Civil Procedure 8(a). (Defs.' Mot. Dismiss, at 4).

Plaintiffs argue that their cause of action is not time-barred because the fraudulent actions by the Defendants prevented them "from gaining the necessary certainty to proceed legally." (Pls.' Opp'n Mot. Dismiss, at 2). According to Plaintiffs, "legal certainty" of the defendants' liability is necessary to activate the statute of limitations. (Pls.' Opp'n Mot. Dismiss, at 4). Defendants' concealment actions prevented them from knowing they had "a valid cause of action" and tolled the statute of limitations in this case. Moreover, Plaintiffs argue that "a medical certification where tobacco smoke is identified as the cause of cancer, or other illnesses, is a recent fenomenom [sic]." (Pls.'s Opp'n Mot. Dismiss, at 10). The physicians that treated Mr. Alicano allegedly never told Plaintiffs about the links between cigarette smoking and lung cancer. (Pls.' Opp'n Mot. Dismiss, at 10). According to the Amended Complaint, "only after recent events was that plaintiff[s] acquired the knowledge that [they] had a valid cause of action and that Pedro Alicano's death was an act which deserved redress ordered by the courts." (Am.Compl.¶ 47). The Plaintiffs allegedly gained legal certainty on November 2001, when they read some unidentified information in the newspaper that prompted them to investigate further. (Am.Compl.¶ 47).

### MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to request dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). When ruling on a 12(b)(6) motion a court must accept all well-pleaded factual averments as true and must draw all reasonable inferences in the plaintiff's favor. *Berezin v. Regency Savings Bank*, 234 F.3d 68, 70 (1st Cir.2000); *Negrón–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994). A Court should not dismiss a complaint for failure to state a claim unless it is clear that plaintiff will be unable to recover under any viable theory. *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank*, 958 F.2d 15, 17 (1st Cir.1992). "A complaint must set forth a factual allegation either directly or inferential respecting each material ele-

ment necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty,* 129 F.3d 20, 25 (1st Cir.1997).

"It is well established that affirmative defenses ... may be raised in a motion to dismiss an action for failure to state a claim." *Blackstone Realty LLC v. FDIC,* 244 F.3d 193, 197 (1st Cir.2001). In the case of the affirmative defense of statute of limitations, dismissal "is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 509 (1st Cir. 1998); *see also Aldahonda–Rivera v. Parke Davis & Co.,* 882 F.2d 590, 592 (1st Cir.1989) ("When a defendant raises an affirmative defense that is obvious on the face of plaintiff's pleadings, and the court makes the ruling based only on those pleadings, the motion is treated as a Rule 12(b)(6) motion to dismiss.").

### DISCUSSION

The Puerto Rico Civil Code provides a one-year statute of limitations for personal injury claims under Article 1802. 31 P.R. Laws Ann. § 5298(2) (2000). This one-year period activates after the date of accrual of the claim. *Espada v. Lugo,* 312 F.3d 1, 3 (1st Cir.2002); *see also* 31 P.R. Laws Ann. § 5299 ("The time for prescription of all kinds of actions, when there is no special provision to the contrary, shall be counted from the day on which they could have been instituted."). A claim accrues, and thus can be instituted, when the injured party has (1) notice of her injury and (2) "knowledge of the likely identity of the tortfeasor." *Espada,* 312 F.3d at 3. Notice of the injury exists when there are "some outward or physical signs through which the aggrieved party may become aware and realize that he [or she] has suffered an injurious aftereffect, which when known becomes a damage even if at the time its full scope and extent cannot be weighed." *Rodríguez–Suris v. Montesinos,* 123 F.3d 10, 13 (1st Cir.1997) (quoting *Delgado Rodríguez v. Nazario De Ferrer,* 121 D.P.R. 347, 1988 WL 580813 (1988)). This is a subjective test requiring "actual" knowledge of both the injury and the author. *Rodríguez–Suris,* 123 F.3d at 15–16. Knowledge of the author of the injury requires "some level of reasonable likelihood of legal liability on the part of the person or entity that caused the injury." *Id.* at 14. The law does not require, however, knowledge of "the exact name of the tortfeasor or the precise intracorporate relationships." *Kaiser v. Armstrong World Indus., Inc.,* 872 F.2d 512, 516 (1st Cir. 1989).

Actual knowledge is not necessary to activate the statute of limitations "where, by due diligence, such knowledge would likely have been acquired." *Espada,* 312 F.3d at 4; *Rodríguez–Suris,* 123 F.3d at 16; *see also Vega v. J. Pérez & CÍA, Inc.* 135 D.P.R. 746, 755 (1994). Through this objective test, the claim accrues on the date that the plaintiff "with the degree of diligence required by law would have known whom to sue." *Rodríguez–Suris,* 123 F.3d at 16; *Kaiser,* 872 F.2d at 516. The diligence required "is that of a 'reasonable man' under like circumstances." *Rosado Serrano v. E.I. Dupont de Nemours & Co.,* 797 F.Supp. 98, 102 (D.P.R.1992). Courts should toll the statute of limitations only in the face of "diligent efforts to discover the cause of the injury or death." *Aldahonda–Rivera v. Parke Davis & Co.,* 882 F.2d 590, 594 (1st Cir.1989). When the tort claim is filed after the one-year term, "plaintiff bears the burden of proving timeliness by establishing that she lacked the necessary knowledge or imputed knowledge before instituting the action." *Espada,* 312 F.3d at 4.

■ An exception to this "due diligence" standard applies when a plaintiff's suspicions "are assuaged by the person who caused the injury." *Id.* Under this exception, the tolling of the statute of limitations "may be halted by further information that renders plaintiff's reliance on those assurances no longer reasonable, so that plaintiff then has an obligation of diligent investigation." *Espada,* 312 F.3d at 4. *Rodríguez–Suris* specified, however, that this tolling exception applies "where a *diligent* plaintiff *reasonably* relies upon representations made by a tortfeasor that her symptoms are not the result of a negligent or otherwise tortious act." 123 F.3d at 16 (emphasis added).

■ Here Plaintiffs allege that they did not have actual knowledge of the likely tortfeasors before November 2001. Because this is a motion to dismiss, the Court assumes that this is true. Nevertheless, neither the Amended Complaint nor Plaintiffs' Opposition lends any support to a finding that they acted with due diligence. A careful and thorough reading of Plaintiffs' Amended Complaint and Opposition to Motion to Dismiss shows that even after learning that Mr. Alicano died from lung cancer, Plaintiffs made no effort to ascertain the causes of the disease or the likely culprits. In the nearly four years that Mr. Alicano spent under medical supervision and the subsequent seven years after his death, Plaintiffs did not even inquire about the causes of Mr. Alicano's sufferings. That due diligence requires victims (or their family members) to inquire about the causes of a life-threatening disease is not an unreasonable proposition. *Cf. Villarini–García v. Hospital Del Maestro, Inc.,* 8

F.3d 81, 85 (1st Cir.1993). And there is no doubt that, if asked, a physician would promptly advise about the hazards of smoking and its link to illnesses such as lung cancer. If the reasonable person— when suffering from lung cancer or when witnessing a family member suffering from it—is not expected to inquire about the cause of such illness, little would be left of the due diligence standard.

■ Plaintiffs' claim that the physicians never informed them about the link between smoking and pulmonary illnesses does not toll the running of the statute of limitations. Due diligence does not mean waiting for answers to fall from the sky—it requires reasonable, active efforts to seek answers and clarify doubts. Plaintiffs are expected to "promptly assert their rights" when faced with facts that create a "reasonable basis for concern" about negligence. *Villarini–García,* 8 F.3d at 16. Failure to consult a lawyer or conduct other investigative efforts constitutes lack of diligence. *See Rodríguez–Suris,* 123 F.3d at 16; *Villarini–García,* 8 F.3d at 85. Plaintiffs' Amended Complaint is bereft of any allegations showing Plaintiffs' efforts to identify the causes of Mr. Alicano's death and the likely culprits. Plaintiffs' failure to take such an initiative in the seven years after Mr. Alicano's death is inexcusable and well-below the diligence of a reasonable person.

The widespread knowledge of the health hazards of smoking magnifies Plaintiffs' lack of diligence. Courts throughout the United States have declared that the hazards of smoking are "common knowledge." [2] *See, e.g., Soliman v. Philip Mor-*

2. Plaintiffs contend that many of these declarations are dicta or represent a declaration of state law. This may be true, but the myriad declarations coming from diverse parts of the nation—whether from courts or legislatures,

whether dicta, holdings or statutory language—strengthens the argument that due diligence would have alerted Plaintiffs to the link between cigarette smoking and pulmonary illnesses. Moreover, whereas these

ris Inc., 311 F.3d 966, 974–75 (9th Cir. 2002); Allgood v. R.J. Reynolds Tobacco Co., 80 F.3d 168, 173 (5th Cir.1996); Roysdon v. R.J. Reynolds Tobacco Co., 849 F.2d 230, 236 (6th Cir.1988); McKay v. Republic Tobacco Co., 2001 WL 122223 at *2 (E.D.Pa.2001); Guilbeault v. R.J. Reynolds Tobacco Co., 84 F.Supp.2d 263, 273 (D.R.I.2000); Gibbs v. Republic Tobacco, L.P., 119 F.Supp.2d 1288, 1294 (M.D.Fla. 2000); Tillman v. Reynolds Tobacco Co., 89 F.Supp.2d 1297, 1301 (S.D.Ala.2000). Three years after Mr. Alicano's death, the settlement between the nation's biggest tobacco companies and various states received ample news coverage. See generally Star Scientific Inc. v. Beales, 278 F.3d 339, 345 (4th Cir.2002) ("By 1997, after several more States had filed similar lawsuits, the major tobacco manufacturers negotiated with a group of State Attorneys General to reach a comprehensive nationwide settlement of the claims."); John Schwartz & Saundra Torry, Tobacco Pact Calls for Strict Federal Controls, The Washington Post, June 21, 1997, at A1 ("The agreement marks the first time that the industry has ever settled smoking-related legal claims. It constitutes the most restrictive set of regulations ever imposed on an industry manufacturing legal products, and the multibillion dollar pot far outweighs that of any settlement in history."). Contrary to Plaintiffs' contentions, (Pls.' Opp'n Mot. Dismiss, at 10), "medical certification" of the links between smoking and lung cancer is not a "recent phenomenon." There have been cautions or warnings in cigarette products since 1965 alerting about the health risks of smoking. See Federal Cigarette Labeling and Advertising Act of 1965, Pub.L. No. 89–92, 79 Stat. 282 (codified as amended at 15 U.S.C. §§ 1331–1340); Public Health Cigarette Smoking Act of 1969, Pub.L. No. 91–222, 84 Stat. 87 (codified as amended at 15 U.S.C. §§ 1331–1340); see also Cipollone v. Liggett Group, Inc., 505 U.S. 504, 514, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) ("[The 1965 Act] made it unlawful to sell or distribute any cigarettes in the United States unless the package bore a conspicuous label stating: 'Caution: Cigarette Smoking May Be Hazardous to Your Health.' "); id. ("[T]he 1969 Act strengthened the warning label, in part by requiring a statement that cigarette smoking 'is dangerous' rather than that it 'may be hazardous.' "). Public studies abound certifying this link. See, e.g., U.S. Dep't of Health & Human Servs., Reducing the Health Consequences of Smoking: 25 Years of Progress (1989), cited in Cipollone v. Liggett Group, Inc., 505 U.S. 504, 513, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); U.S. Dep't of Health & Human Servs., The Health Consequences of Smoking: Nicotine Addiction (1988), cited in Soliman 311 F.3d at 969; U.S. Dep't of Health, Educ., and Welfare, U.S. Surgeon Gen. Advisory Comm., Smoking and Health (1964), cited in Cipollone, 505 U.S. at 513, 112 S.Ct. 2608 (1992). Finally, Plaintiffs' own allegations in the Amended Complaint disprove their claim that information confirming the hazards of cigarette smoking is "recent." [3] If, as Plaintiffs al-

---

courts' "common knowledge" findings were usually made in the context of a state tort statute, here the Court is not using these findings to determine liability. Instead, the Court uses these findings to strengthen its conclusion that due diligence—in the form of asking lawyers or physicians, or conducting a basic investigation—would have revealed to Plaintiffs the link between smoking and respiratory illnesses well before the date this suit was filed.

**3.** Plaintiffs allege, for instance, that scientific findings published in the 1950's suggested a link between cigarette smoking and lung cancer, (Am.Compl.¶ 21); mention a report by the United States Surgeon General published in 1964 "identifying cigarette smoking as one

lege, the Defendants' conspiracy to conceal was *a reaction to* the *numerous* studies confirming the link between smoking and respiratory illnesses, then the hazards of smoking *must* have been both public and widespread for this conspiracy theory to make sense.

This widespread knowledge of the risks of smoking confirms that the link between smoking and respiratory illness is not a carefully guarded secret and that minimum diligence would have revealed it. Plaintiffs had more than seven years to exert the modicum of care and curiosity that would have uncovered the link between Mr. Alicano's smoking habit and his injuries; their failure to act with diligence—to ask a doctor or consult with a lawyer—prevents the tolling of the statute of limitations. *Cf. Rodríguez–Suris,* 123 F.3d at 15 ("[I]f a plaintiff's ignorance of an injury and its origin was due to the plaintiff's own negligence or lack of care, then the statute of limitation would not be tolled.").

Plaintiffs still argue that (1) the statute of limitations tolled because the fraudulent concealment served to "nullify" the warnings and created "uncertainty" as to the real effects of cigarette smoking, and (2) the Court should not make a determination regarding due diligence in this preliminary stage of the suit. Plaintiffs err in both regards.

■■■■■ First, while it is true that Puerto Rico law tolls the statute of limitations when the plaintiff relies on statements by the defendants, this exception applies to plaintiffs that are diligent and act reasonably in their reliance. *See Rodríguez–Suris,* 123 F.3d at 16 (holding that the tolling exception applies "where a diligent plaintiff reasonably relies upon representations made by a tortfeasor that her symptoms are not the result of a negligent or otherwise tortious act"). As discussed above, in the seven years after Mr. Alicano's death Plaintiffs acted below the degree of diligence expected from a reasonable person. In addition, Plaintiffs' filings do not support a finding that they reasonably relied on the Defendant's statements from 1994 to 2001. The Amended Complaint certainly lends no support to this argument, as Plaintiffs do not cite a single, specific statement from the Defendants that "nullified" the common knowledge about the hazards of smoking and prevented them from acknowledging the link between smoking and Mr. Alicano's illnesses.[4] The Amended Complaint does not even mention a statement or report that Plaintiffs actually read. Even if Plaintiffs were legitimately confused or assuaged, the easy access to public sources of information confirming the health hazards of smoking—including government reports, warning labels, and the health care industry—imposed on the Plaintiffs an obligation to at least investigate further. *See Espada,* 312 F.3d at 4 (explaining that even when assuaged by the party who caused the injury, the tolling of the statute of limitations "may be halted by further information that renders plaintiff's reliance on those assurance no longer reasonable, so that plaintiff then has an obligation of diligent investigation"). Inertia, passive-

---

of the leading causes of cancer," (Am. Compl.¶ 30); and refer generally to "research and conclusive evidence published by numerous sources and authorities in the field", (Am. Compl.¶ 34).

**4.** Plaintiffs mentions the "Frank Statement" and generally refers to "false and misleading statements," but at no point in the Amended Complaint do they allege to have read or been influenced by any of these statements. This is not surprising, since Plaintiffs' counsel admits to have "copied directly from a Complaint against defendants where plaintiff was the United States."

ness, and indifference in the face of confusing or contradictory information is inconsistent with the due diligence standard.

■ Second, Puerto Rico law does not require, as Plaintiffs claim (Pls.' Opp'n Mot. Dismiss, at 8–9), "legal certainty that the illness suffered by [Mr. Alicano] was caused by cigarette smoke and that Defendants were responsible for such damages." The law only requires knowledge of the injury and the entity that likely caused it. The analysis focuses "on whether the plaintiff knew the facts that gave rise to the claim, not their full legal implications." *Villarini–García*, 8 F.3d at 85. "Reasonable likelihood", and not "legal certainty," is the applicable standard. Plaintiffs had notice of their damages in 1994 when Mr. Alicano died, and with reasonable diligence they would have learned that cigarettemakers were the likely culprits. Having notice of their injury and the likely tortfeasors, Plaintiffs did not need to wait for "legal certainty" or additional confirmation to bring their claim. At that point, having a "reasonable basis for concern about negligence," they should have taken affirmative steps to assert their rights. Even if Plaintiffs did not become aware of the "concealment," notice of the injury and identification of the culprits through due diligence would have been enough to alert them to their potential cause of action. *Cf. Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 39 (1st Cir.2000) (rejecting a "fraudulent misrepresentation" claim on statute of limitations grounds because "plaintiff knew well of her addiction and that it was caused by defendants. That she did not know the degree of defendants' wrongdoing seems irrelevant").

Even if Plaintiffs indeed were "confused" by the Defendants' fraudulent misrepresentations, due diligence would have given them a "reasonable basis for concern." In fact, many of the courts that declared the hazards of smoking to be common knowledge did so while recognizing that the cigarettes companies engaged in campaigns of misrepresentations. *See, e.g., Soliman*, 311 F.3d at 974; *Allgood*, 80 F.3d at 173; *Gibbs*, 119 F.Supp.2d at 1294; *Tillman*, 89 F.Supp.2d at 1301. These findings confirm that the hazards and dangers of smoking are firmly entrenched as public knowledge, *despite* the efforts by the cigarette companies to confuse and conceal.

■ Third, determinations of due diligence and reasonable reliance can be made at the motion to dismiss stage. The due diligence requirement is an objective standard that has "buried within it a normative question of how much diligence *should* be expected of a reasonable lay person," *Villarini–García*, 8 F.3d at 84. While it is often left for a jury to decide, *see id.* at 86, under certain circumstances this may not be question for the finder of fact, *Rodriguez–Suris*, 123 F.3d at 17. Dismissal under Rule 12(b)(6) still would be appropriate if a plaintiffs' pleadings do not lend any support to a finding of due diligence or reasonable reliance.

■ As the record shows, the Plaintiffs' pleadings in this case do not support a finding of due diligence or reasonable reliance. They suggest the opposite. Plaintiffs' Amended Complaint avers that they had no actual knowledge of the link between cigarette smoking and Mr. Alicano's illnesses, but the dangers of smoking are public knowledge. Moreover, there is not a single allegation showing or even suggesting due diligence. Plaintiffs claim that the Defendants' misrepresentations "nullified" any public knowledge regarding the dangers of smoking, yet the Amended Complaint does not mention any specific statement that Plaintiffs actually read to "nullify" their knowledge of the dangers of smoking. Under these circumstances, and

having found that as a matter of law due diligence requires a modicum of effort and care that Plaintiffs did not display, dismissal of this suit as time-barred is appropriate at this stage.

## CONCLUSION

For these reasons, Defendants R.J. Reynolds Tobacco Company, Inc., Lorillard Tobacco Company, and Brown & Williamson Tobacco Corporation's Motion to Dismiss is **GRANTED** and the claims against all Defendants are **DISMISSED**.

**IT IS SO ORDERED.**